UNITED STATES of America

v.

Jerome Arthur CHAVIS.

No. 1:93–CR–25.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 13, 1993.

Keith F. Giblin, Asst. U.S. Atty., Beaumont, TX, for plaintiff.

Dennis Powell, Orange, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

A routine traffic stop of Interstate Highway ultimately yielded approximately 1 kilogram of cocaine powder. The defendant has moved to suppress the cocaine. A hearing on the motion was held on October 6, 1993 [1], and the court is of the opinion that the police did not violate the Fourth Amendment of the Constitution.

### Factual Background

On August 26, 1992, Sergeant Paul Davis of the Texas Department of Public Safety was on routine patrol on Interstate 10 in Orange County, Texas. At approximately 11 p.m., he observed a Mercury Cougar change lanes without a signal. Davis stopped the

1. At the hearing held on October 6th, Chavis' Attorney, Dennis Powell, called Mr. David Rose as a witness. Mr. Rose, a communication supervisor at the Texas D.P.S., brought the dispatch tape from the night of August 26, 1992. However, the tape can only be played on a special unit. A last minute attempt to play the tape at the D.P.S. office during the lunch recess was unsuccessful. This court allowed Mr. Powell to submit a transcript of the tape for consideration in this proceeding. Since Mr. Powell has failed to submit a transcript of the tape in over two months, the court does not have the benefit of the times of the various calls and responses other than the record made at the hearing. The defendant has, in effect, waived the right to offer the transcript into evidence.

car and asked the driver, later identified as Chavis, for his driver's license. Chavis retrieved his wallet from the trunk of the car. Officer Davis observed Chavis pass over his license three times before finally recognizing it and handing it to Davis. Chavis also appeared nervous and his hands were shaking. Chavis informed Officer Davis that he was travelling from Houston[2] to Indiana. When Davis questioned Chavis as to why he began his long trip at night, Chavis simply responded that it was time to go. Initially, Chavis told Officer Davis that the car he was driving belonged to him. However, the automobile's insurance card listed Harold Snelling as the policyholder. Chavis then responded that the car actually belonged to Snelling, his stepfather. As Officer Davis was running Chavis' criminal history in the patrol car, he observed Chavis pacing and talking to himself. The criminal history check revealed that Chavis had previously been arrested for attempted murder and an offense involving stolen property.[3]

Based on a combination of the above mentioned factors, Davis was left with the impression that Chavis was trying to hide something. Davis therefore asked Chavis for permission to search the car. Chavis did not consent to a search. Officer Davis then decided to call for a drug dog. Within ten minutes of the original traffic stop, Davis radioed Officers Cole, Buchholz, and Mardis, who were patrolling I–10 with Cole's trained K–9 Unit, Athos. Cole and the others had just passed Davis's parked car on I–10 and had noticed that Davis had pulled a car over. They arrived on the scene approximately 3–5 minutes after Davis' call.

After Cole and the other officers arrived, Chavis began talking loudly and gave the officers consent to search the vehicle. The officers declined the offer, and Cole ran the dog around Chavis' car. The dog alerted on the trunk area.[4] After the officers removed the luggage from the trunk, the dog alerted on an individual piece of luggage.[5]

After the dog's alert, Officer Cole noticed a bulge in Chavis' front pocket and asked Chavis if he was carrying any weapons. When Chavis pulled the contents of his pockets out to verify that he was unarmed, Cole observed two marijuana joints. The officers took custody of the luggage and arrested Chavis. The officers opened the bag in Chavis' presence at the D.P.S. office in Orange, and found 2.5 pounds of a substance which was later determined to be cocaine.[6]

### The Law

Chavis has the burden of proving, by a preponderance of the evidence, that the cocaine was obtained in violation of his Fourth Amendment rights. *United States v. Smith,* 978 F.2d 171, 176 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1620, 123 L.Ed.2d 179 (1993). Under *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968), the judicial inquiry into the reasonableness of a search or seizure "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." This test applies to cases in which motorists are stopped for violating traffic laws. *United States v. Shabazz,* 993 F.2d 431 (5th Cir.1993).

The initial traffic stop of the vehicle was justified. Under Tex.Rev.Civ.Stat.Ann. art. 6701d § 68(a) (1977), a driver violates Texas traffic law if he fails to signal when "mov[ing] right or left upon a roadway." Davis' testimony that Chavis changed lanes without signalling is uncontroverted.

*Terry's* second prong requires that the search or seizure be reasonably related in scope to the circumstances which initially justified the interference. In a traffic stop, this prong focuses upon the length of the

2. Davis testified that Houston is a major drug distribution point.

3. The record check revealed no convictions.

4. This first "hit" occurred no more than twenty minutes after the original stop.

5. The officers also discovered two empty metal boxes affixed underneath the car.

6. Although the officers issued a citation for the possession of marijuana, there is currently no charge before this court relating to the possession of marijuana.

detention itself. *See Shabazz* at 437 ("Therefore, the questioning did nothing to extend the duration of the initial, valid seizure"); *United States v. Morales–Zamora*, 914 F.2d 200 (10th Cir.1990) (Canine sniff of defendants' vehicle at a roadblock checkpoint was not an unreasonable detention because agents completed the canine sniff before another agent had finished examining the driver's license and registration). There is no question that in a valid traffic stop, an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation without exceeding the bounds of *Terry*. *Shabazz.*

Although the computer check on Chavis' criminal history had returned before Davis called for the drug dog, the record does not specify when the computer check on the car's registration was completed. Officer Davis testified that it is not unusual for a normal traffic stop to last twenty minutes. It is uncontroverted that the dog arrived on the scene 13–15 minutes after the original traffic stop and first alerted on the trunk area five to seven minutes later. Based on the evidence before this court, I find that the pre-alert detention did not exceed the original scope of the traffic stop.[7]

A dog "sniff" is not a search within the meaning of the Fourth Amendment. *United States v. Seals*, 987 F.2d 1102 (5th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). Furthermore, individualized reasonable suspicion of drug-related criminal activity is not required when the dog sniff is employed during the seizure of a vehicle. *Id.* The officers were therefore justified in using the drug dog during the traffic stop. Finally, the dog alert gave the officers probable cause to seize the luggage and arrest Chavis. *Florida v. Royer*, 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983); *United States v. Gonzalez–Basulto*, 898 F.2d 1011, 1013 (5th Cir. 1990).

7. Even if this court were to find that detention exceeded the original bounds of the traffic stop, the detention would be supported by Officer Davis' articulated suspicion of criminal activity acquired during the traffic stop. *See, e.g. United States v. Hardy*, 855 F.2d 753 (11th Cir.1988),

**Conclusion**

Accordingly, taking into consideration all the circumstances, the witnesses who testified, and the record made at the hearing, the court finds the cocaine seizure did not violate the Fourth Amendment of the United States Constitution.

It is hereby ORDERED that Defendant's Motion to Suppress is **DENIED.**

*cert. denied* 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989) (reasonable suspicion acquired during a traffic stop justified a one hour detention of the driver after the investigation of the original traffic stop ended).