**UNITED STATES of America**

v.

**Jerome Arthur CHAVIS.**

**No. 1:93–CR–25.**

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 28, 1995.

7. As noted, the government has not presented such legal authority to the Court, and the Court has failed to find any.

Dennis Robert Powell, Orange, TX, George McCall Secrest, Jr., Bennett & Secrest, Houston, TX, Jerome Arthur Chavis, South Bend, IN, for defendant.

Keith Fredrick Giblin, Asst. U.S. Atty., Beaumont, TX, for U.S.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

A routine traffic stop on Interstate Highway 10 ultimately yielded 2.5 pounds of cocaine powder. Defendant, driver of the vehicle, was convicted and sentenced in this court for violating 21 U.S.C. § 841(a)(1). Prior to his trial, the Defendant moved to suppress the cocaine. A suppression hearing was held on October 6, 1993, and the court issued a ruling on December 13, 1993. The court found the search did not violate the Fourth Amendment of the Constitution. *United States v. Chavis,* 841 F.Supp. 780 (E.D.Tex. 1993).

At the October 16, 1993, hearing, this court placed on the Defendant the burden of proving, by a preponderance of the evidence, that the cocaine was obtained in violation of his Fourth Amendment rights. *Chavis,* 841 F.Supp. at 782. Defendant appealed his conviction. He claimed that, at the suppression hearing, the burden should have been placed on the government. The Fifth Circuit agreed and held that this court erred by placing the burden on Chavis. *United States v. Chavis,* 48 F.3d 871, 872 (5th Cir.1995). The reviewing court vacated Defendant's conviction and sentence and remanded to (1) allow for a further development of the record; and (2) give this court an opportunity to place correctly the burden on the government. *Chavis,* 48 F.3d at 873.

The court held a hearing on August 16, 1995, to develop more fully the record and now reconsiders Defendant's motion to suppress.

### Factual Background [1]

On August 26, 1992, Sergeant Paul Davis of the Texas Department of Public Safety was on routine patrol on Interstate 10 in Orange County, Texas. At approximately 11:10 p.m., he observed a Mercury Cougar change lanes without a signal. Davis stopped the car and asked the driver, later identified as Chavis, for his driver's license. Chavis retrieved his wallet from the trunk of the car. Officer Davis observed Chavis pass over his license three times before finally recognizing it and handing it to Davis. Chavis also appeared nervous and his hands were shaking. Chavis informed Officer Davis that he was travelling from Houston [2] to Indiana. When Davis questioned Chavis as to why he began his long trip at night, Chavis simply responded that it was time to go. Initially, Chavis told Officer Davis that

---

1. Counsel have stipulated that the court is free to consider evidence obtained at both the October 16, 1993, and the August 16, 1995, hearings. With that in mind, the court will use the facts developed at the August 16, 1995, hearing to supplement the facts set out in the court's December 13, 1993, opinion.

2. Davis testified that Houston is a major drug distribution point.

the car he was driving belonged to him. However, the automobile's insurance card listed Harold Snelling as the policyholder. Chavis then responded that the car actually belonged to Snelling, his stepfather.

At 11:12 p.m. Officer Davis requested driver's license and criminal history information on Chavis' Indiana driver's license number. While he was running Chavis' criminal history in the patrol car, he observed Chavis pacing and talking to himself. Officer Davis received the criminal history check at 11:19 p.m.; it revealed that Chavis had previously been arrested for attempted murder and an offense involving stolen property.[3]

Based on a combination of the above mentioned factors, Davis was left with the impression that Chavis was trying to hide something. Davis therefore asked Chavis (at approximately 11:20 p.m.) for permission to search the car. Chavis did not consent to a search. Officer Davis then decided to call for a drug dog. Within roughly ten minutes of the original traffic stop (approximately 11:21 p.m.), Davis radioed Officers Cole, Buchholz, and Mardis, who were patrolling I–10 with Cole's trained K–9 Unit, Athos. Cole and the others had just passed Davis's parked car on I–10 and had noticed that Davis had pulled a car over. At approximately 11:24 p.m. they arrived on the scene.

After Cole and the other officers arrived, Chavis began talking loudly and gave the officers consent to search the vehicle. The officers declined the offer, and Cole ran the dog around Chavis' car. At approximately 11:27 p.m., the dog alerted on the trunk area.[4] After the officers removed the luggage from the trunk, the dog alerted on an individual piece of luggage.[5]

After the dog's alert, Officer Cole noticed a bulge in Chavis' front pocket and asked Chavis if he was carrying any weapons. When Chavis pulled the contents of his pockets out to verify that he was unarmed, Cole

observed two marijuana joints. At some point between the dog alert and 11:33 p.m. the officers took custody of the luggage and arrested Chavis.

At 11:33 p.m. Officer Davis requested a check on the vehicle registration and to check if the vehicle had been reported stolen. The officers did not receive any information back concerning this check before they left the scene with the Defendant in custody.

At the D.P.S. office in Orange, the officers opened the bag in Chavis' presence and found 2.5 pounds of a substance which was later determined to be cocaine.[6]

### The Law

▮▮▮ When the government conducts a warrantless search, it has the burden of proving, by a preponderance of the evidence, that the evidence was not obtained in violation of his Fourth Amendment rights. *Chavis*, 48 F.3d at 872 (citing *United States v. Roch*, 5 F.3d 894, 897 (5th Cir.1993)). Under *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968), the judicial inquiry into the reasonableness of a search or seizure "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." This test applies to cases in which motorists are stopped for violating traffic laws. *United States v. Shabazz*, 993 F.2d 431, 435 (5th Cir.1993).

The initial traffic stop of the vehicle was justified. Under Tex.Rev.Civ.Stat.Ann. art. 6701d § 68(a) (1977), a driver violates Texas traffic law if he fails to signal when "mov[ing] right or left upon a roadway." Davis' testimony that Chavis changed lanes without signalling is uncontroverted.

▮▮▮ *Terry*'s second prong requires that the search or seizure be reasonably related in scope to the circumstances which initially justified the interference. In a traffic stop, this prong focuses upon the length of the

---

3. The record check revealed no convictions.

4. This first "hit" occurred no more than twenty minutes after the original stop.

5. The officers also discovered two empty metal boxes affixed underneath the car.

6. Although the officers issued a citation for the possession of marijuana, there is currently no charge before this court relating to the possession of marijuana.

detention itself. *See Shabazz* at 437 ("Therefore, the questioning did nothing to extend the duration of the initial, valid seizure"); *United States v. Morales–Zamora,* 914 F.2d 200 (10th Cir.1990) (canine sniff of defendants' vehicle at a roadblock checkpoint was not an unreasonable detention because agents completed the canine sniff before another agent had finished examining the driver's license and registration). There is no question that in a valid traffic stop, an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation without exceeding the bounds of *Terry. Shabazz,* 993 F.2d at 437.

 The computer check on Chavis' criminal history had returned before Davis called for the drug dog and the record specifies that Officer Davis ran the computer check on the car's registration after Chavis was already in custody. As noted above, it is undisputed that, pursuant to a valid stop for a traffic offense, an officer may process a vehicle registration check. While the officer is processing an efficient, timely registration check, the length of the detention is presumptively within the bounds of the Fourth Amendment. *See Shabazz,* 993 F.2d at 437. In this case, however, Chavis was already in custody at the time the vehicle registration check began. The vehicle registration check, therefore, cannot be used to justify detention between 11:19 p.m. (criminal background check complete) and 11:24 p.m. (the time at which Athos arrived on the scene). *See, e.g., Shabazz,* 993 F.2d at 436 (when reasonable suspicion related to initial stop has been assuaged, justification for detention evaporates and is no longer valid). The government can hardly be heard to argue that Officer Davis was detaining Chavis in order to run a vehicle registration check when the check was not even *begun* until twenty-plus minutes had elapsed and Chavis was already in custody.[7]

The question therefore becomes whether Officer Davis developed, during the time be-

tween the initial valid stop and the conclusion of the computer criminal history check (11:19 p.m.) reasonable suspicion sufficient to warrant detaining Chavis until Athos alerted on the trunk of the car (11:27 p.m.). The court finds that any detention Chavis may have endured beyond what was warranted by the traffic violation stop was justified by the reasonable suspicion Officer Davis developed that Chavis was transporting narcotics; Officer Davis' basis for his reasonable suspicion was gained during his questioning and observations of Chavis that, (1) were reasonably related to the nature of the initial stop; and (2) were made before the length of the initial detention became unreasonable. *See, e.g. United States v. Hardy,* 855 F.2d 753 (11th Cir.1988), *cert. denied,* 489 U.S. 1019, 109 S.Ct. 1137, 103 L.Ed.2d 198 (1989) (reasonable suspicion acquired during a traffic stop justified a one hour detention of the driver after the investigation of the original traffic stop ended). As noted above, Officer Davis observed that Chavis, (1) was deceptive as to who actually owned the vehicle; (2) appeared to purposely ignore the presence of his wallet and license; (3) was visibly nervous and shaking; (4) was leaving a major drug distribution city; and (5) began to pace and talk to himself. This led Officer Davis to believe that Chavis was attempting to hide something, possibly drugs.

 The court again notes that a dog "sniff" is not a search within the meaning of the Fourth Amendment. *United States v. Seals,* 987 F.2d 1102 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993). Furthermore, individualized reasonable suspicion of drug-related criminal activity is not required when the dog sniff is employed during the seizure of a vehicle. *Id.* The officers were therefore justified in using the drug dog during the traffic stop. Finally, the dog alert gave the officers probable cause to seize the luggage and arrest Chavis. *Florida v. Royer,* 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75

---

7. The court further notes that to allow officers to run all four computer checks individually (with each check taking anywhere from 4 to 15 minutes) would in effect grant the government carte blanche to detain a citizen upwards of one hour on a routine traffic stop. Such a policy would

likely run afoul of the Fourth Amendment. *See United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) (in determining the reasonableness of the length of detention court should consider whether "police diligently pursued their investigation").

L.Ed.2d 229 (1983); *United States v. Gonzalez–Basulto,* 898 F.2d 1011, 1013 (5th Cir. 1990).

## Conclusion

Accordingly, taking into consideration all the circumstances, the witnesses who testified, and the record made at both hearings, the court finds the cocaine seizure did not violate the Fourth Amendment of the United States Constitution.

It is hereby ORDERED that Plaintiff's Motion to Suppress is DENIED.