Corina Deanda SAENZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 312–91.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 25, 1992.

Tony Chavez, Odessa, for appellant.

Richard Barajas, Dist. Atty., & J. Cole Fulks, Asst. Dist. Atty., Fort Stockton, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

After the trial judge denied appellant's motion to suppress the contraband alleged in the indictment, appellant proceeded to trial and was convicted by a jury of aggravated possession of marihuana pursuant to Tex.Health & Safety Code Ann. § 481.-121(c). The jury assessed punishment at five years confinement and a fine of $5,000.00. The Court of Appeals affirmed. *Saenz v. State*, No. 08–89–00351–CR (Tex. App.—El Paso, delivered January 23, 1991) (not published). Appellant presents one ground for review claiming her initial stop and detention by a roving patrol violated the Fourth Amendment to the United States Constitution and Article I, § 9 of the Texas Constitution.[1] We will reverse and remand.

1. Specifically, appellant's ground for review states:

The Court of Appeals erred in affirming the trial court's denial of appellant's motion to suppress the marijuana seized by Border Patrol agents on roving patrol because the initial stop and detention of appellant were not supported by reasonable suspicion as required by the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution.

## I.

At 4:00 a.m. on October 26, 1986, Border Patrol Officer Alonzo Mendoza was operating a "roving patrol" along Highway 67 between Marfa and Presidio. Mendoza received a sensor alert which indicated that three or four vehicles were traveling north on Highway 67. Fifteen minutes after the sensor alert, Mendoza observed and began to follow appellant's northbound vehicle, which had New Mexico license plates and carried appellant and one passenger. Mendoza subsequently stopped appellant's vehicle even though no driving violations or suspicious driving behavior occurred. After the stop, Mendoza advised appellant that he was making an immigration check and requested appellant's citizenship and documents. Both appellant and her passenger provided valid driver's licenses with Presidio addresses and valid resident alien cards. During the immigration check, Mendoza noticed a gasoline can on the rear floorboard behind the passenger's seat. Appellant's passenger "continued to look straight forward" during Mendoza's questioning. Both appellant and the passenger appeared nervous. Mendoza asked to search the vehicle's trunk and appellant consented. The search revealed the alleged marihuana.

The trial court heard the motion to suppress in June 1987. Appellant later submitted a brief in support of the motion. In November 1988, the trial judge denied the motion to suppress. In July 1989, the State moved to dismiss the indictment against appellant on grounds of insufficient evidence, but the trial judge denied the motion. At trial, the judge rejected the State's plea bargain offer of ten years probation and no fine. In its argument before the Court of Appeals, the State confessed error and agreed with appellant that appellant's "stop was illegal, thus tainting the evidence seized following the stop and making it error for the trial court to overrule [a]ppellant's motion to suppress." *Saenz,* slip op. pg. 1. However, the Court of Appeals concluded that Mendoza's stop of appellant's car "was reasonable in light of articulable facts known to the agents prior to the actual stop, as assayed under the test set out in *Brignoni–Ponce.*" *Saenz,* slip op. pg. 5.

We granted review to determine whether the Court of Appeals erred in concluding appellant's stop was supported by reasonable suspicion as required by the Fourth Amendment to the United States Constitution and Article I, § 9 of the Texas Constitution.

## II.

Both the State and appellant rely on *United States v. Brignoni–Ponce,* 422 U.S. 873, 883, 95 S.Ct. 2574, 2580–2581, 45 L.Ed.2d 607 (1975), which involved a Border Patrol stop near the California–Mexico border. The State contends that the principles announced in *Brignoni–Ponce* have been satisfied, and the stop and the subsequent consensual search of appellant's vehicle were valid. According to the State, the factors that Mendoza considered prior to stopping appellant's vehicle were:

1. the vehicle carried two occupants,
2. the vehicle bore New Mexico license plates,
3. the vehicle was a 1979 Mercury,
4. the vehicle was traveling from a border area,
5. Mendoza's experience with alien and narcotics trafficking on Highway 67, and,
6. The vehicle was traveling at 4:00 a.m.

Appellant counters that the vehicle was fifty-three miles north of the border, traveling on the only highway from Presidio to the state where her vehicle was registered. The vehicle was neither heavily loaded nor uniquely equipped. There was no showing that the sensor alert was triggered by appellant's vehicle. Finally, appellant took no evasive action, was not speeding or committing any traffic violations, and displayed no unusual behavior.

## III.

### A.

In *Brignoni–Ponce,* the Supreme Court reasoned that "[b]ecause of the limited na-

ture of the intrusion, [roving patrol stops] may be justified on facts that do not amount to the probable cause required for an arrest." *Id.*, at 881, 95 S.Ct. at 2580. The Court held

> ... when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion. As in *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], the stop and inquiry must be "reasonably related in scope to the justification for their initiation." 392 U.S., at 29, 88 S.Ct. at 1884. The officer may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.

*Id.*

The Court continued:

> We are unwilling to let the Border Patrol dispense entirely with the requirement that officers must have a reasonable suspicion to justify roving-patrol stops. [footnote omitted] In the context of border area stops, the reasonableness requirement of the Fourth Amendment demands something more than the broad and unlimited discretion sought by the Government. Roads near the border carry not only aliens seeking to enter the country illegally, but a large volume of legitimate traffic as well.

*Id.*

As a limitation on Border Patrol searches, the Court stated:

> Except at the border and its functional equivalents, officers on roving patrol may stop vehicles only if they are aware of *specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country.*[2]

*Id.*, at 884, 95 S.Ct. at 2582.

■ Under *Brignoni–Ponce*, we must examine the totality of the circumstances to determine whether reasonable suspicion exists. *Brignoni–Ponce*, 422 U.S. at 885, n. 10, 95 S.Ct. at 2582, n. 10. In *Armstrong v. State*, 550 S.W.2d 25 (Tex.Cr.App. 1977) (opinion on rehearing), we examined the totality of the circumstances to determine if the stop of appellant's vehicle was reasonable. In resolving the issue, we held:

> The totality of the circumstances surrounding the incident are looked to in determining whether the police conduct was reasonable *State v. Hocker*, 113 Ariz. 450, 556 P.2d 784 (1976); *State v. Gastelo*, 111 Ariz. 459, 532 P.2d 521 (1975). While a temporary investigative detention is allowed under certain circumstances, these circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based upon an objective perception of the events rather than the subjective feelings of the detaining officer. In order to justify the intrusion, the law enforcement officer must have specific articulable facts, which in the light of his experience and general knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *United States v. Brignoni–Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio* [392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1969)]; *Ablon v. State* [537 S.W.2d 267 (Tex.Cr. App.1976)]; *Mann v. State* [525 S.W.2d 174 (Tex.Cr.App.1975)]; *Hernandez v. State* [523 S.W.2d 410 (Tex.Cr.App. 1975)]. Thus, even in the absence of bad faith, detention based "on a mere hunch" is illegal. There must be a reasonable suspicion by the law enforcement officer that some activity out of the ordinary is or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206, 1208 (1976); *State v. Hocker*, supra; *Irwin v. Superior Court of Los Angeles County*,

**2.** Unless otherwise indicated, all emphasis here-in is supplied by the author.

1 Cal.3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969). Where the events are as consistent with innocent activity as with criminal activity, a detention based upon those events is unlawful. *Irwin v. Superior Court of Los Angeles County, supra.*

*Id.,* 30–31.

The Supreme Court listed several factors to be taken into consideration when deciding whether reasonable suspicion exists for the stop of a vehicle:

1. the characteristics of the area in which the officer encounters the vehicle,

2. the proximity to the border,

3. the usual patterns of traffic on the particular road,

4. officer's previous experience in detecting illegal entry and smuggling,

5. information on recent illegal border crossings in the area,

6. the driver's behavior, such as erratic driving or obvious attempts to evade officers,

7. physical aspects of the vehicle and the vehicle's load,

8. an extraordinary number of passengers, their behavior, or persons trying to hide.

*Brignoni–Ponce,* 422 U.S. at 885, 95 S.Ct. at 2582.

We considered the *Brignoni–Ponce* factors in *Luera v. State,* 561 S.W.2d 497, 499 (Tex.Cr.App.1978), and held that reasonable suspicion is not limited to any or all of these factors.[3] Rather, the "factors must be analyzed on a case-by-case basis" to determine if there is reasonable suspicion for the initial detention. *Luera,* 561 S.W.2d at 499. In *Luera,* we determined the Border Patrol executed an *illegal* stop where:

1. appellant appeared to be Hispanic,

2. the area was known for alien-smuggling,

3. appellant attempted a high speed evasion,

4. appellant's vehicle had a suspicious suspension,

5. appellant's vehicle had out of county license plates,

6. appellant refused to look at the Border Patrol officer when driving past, and,

7. appellant's vehicle had triggered a Border Patrol sensor on the highway.

**B.**

■ With the foregoing in mind, we now turn to consider the *Brignoni–Ponce* factors, in light of the instant case, to determine whether Mendoza's actions were reasonable.

1. *The characteristics of the area in which the officer encounters the vehicle:*

Although Mendoza stated Highway 67 was a primary route for smuggling operations, we do not believe appellant's mere presence on Highway 67 can be deemed suspicious merely because of a high incidence of smuggling in the area. *See, United States v. Frisbie,* 550 F.2d 335, 339 (5th Cir.1977).

*Frisbie,* which relied on *Brignoni–Ponce,* dealt with a similar, sensor originated, early morning stop and search of a vehicle traveling north from the border area. The search occurred south of Alpine in an area used to transport aliens and contraband. *Frisbie,* at 337. The Border Patrol claimed a reasonable suspicion for stopping the vehicle because of the "direction the vehicle was traveling, the likeli-

---

**3.** The Court of Appeals relied exclusively on *Brignoni–Ponce* and *Luera* in resolving appellant's point of error. As previously noted, the State confessed error, and in so doing, relied upon *United States v. Melendez–Gonzalez,* 727 F.2d 407 (5th Cir.1984); *United States v. Pena–Cantu,* 639 F.2d 1228 (5th Cir.1981); *United States v. Lamas,* 608 F.2d 547 (5th Cir.1979); *and, United States v. Lopez,* 564 F.2d 710 (5th Cir.1977). The Court of Appeals noted that "each of those cases differ significantly in one respect or another." However, the Court failed to distinguish or otherwise mention those cases in its opinion. Accordingly, we will exercise discretionary review. *See, Arcila v. State,* 834 S.W.2d 357, 361 (Tex.Cr.App.1992), *and, Delrio v. State,* 840 S.W.2d 443, 447, n. 7 (Tex.Cr.App. No. 1406–91, delivered November 4, 1992) slip op. pg. 7, n. 7.

hood that the vehicle was coming from an unpatrolled river area, the difficulty the driver had in stopping the vehicle, the sparsely populated area where the stop occurred, their knowledge that local traffic did not normally travel the roads in question at such early hours of the morning and that the route in question was frequently traveled by persons transporting illegal aliens and contraband. *Id.* However, the Court stated, "We discern nothing to indicate that the sensor signals being received established a reasonable suspicion that the vehicles in question were transporting illegal aliens." *Id.*, at 338. The Court stated that the movements of a loaded vehicle, with out of state license plates, in the early morning hours, did not create a reasonable inference of criminal activity. *Id.*, at 339. The Court affirmed the trial court's granting of the motion to suppress.

*United States v. Melendez–Gonzales*, 727 F.2d 407, 411 (5th Cir.1984), involved a Border Patrol stop on the same highway as the instant case, approximately sixty miles north of the Texas–Mexico border. In the Border Patrol officer's "experienced opinion, Highway 67 [was] a known smuggling route, particularly in the early morning hours." *Id.* The Border Patrol was alerted at 4:57 a.m. by sensors along the highway south of Marfa. Noting that "[w]hile Highway 67 extends from the border, it goes through Presidio, Texas, a town with a population of 1100–1200, and Shafter, with a population of 700–800, before reaching Marfa." Because the defendant's vehicle was north of the towns of Presidio and Shafter, the Court concluded that "[i]f a vehicle is already past towns in this country, the mere fact that it is proceeding on a public highway leading from the border is not sufficient cause to believe the vehicle came from the border." *Id.* On addressing the factors the Border Patrol relied on in making the stop, the Court concluded that "it [was] questionable that the [Border Patrol] agents actually relied on anything more than the fact that defendant was traveling north on Highway 67." *Id.*

For these reasons, we find this factor militates against a finding of reasonable suspicion.

### 2. The proximity to the border:

Appellant's vehicle was stopped north of Presidio and Shafter, but south of Marfa, fifty-three miles from the border, on the only highway from Presidio to New Mexico, the state where her vehicle was registered. In *United States v. George*, 567 F.2d 643, 645 (5th Cir.1978), the Fifth Circuit held:

> ... [P]roximity to the border is not sufficient in itself to justify a roving stop. 'If the mere presence of a vehicle upon a public highway leading away from the border constitutes a sufficient 'reason to believe' the vehicle in fact came from the border, an untold number of innocent travelers are daily subject to inclusion in this dangerous category.'

*George*, 567 F.2d at 645 (Court found a 1:45 a.m. Border Patrol stop in the Big Bend area improper) (quoting *United States v. Escamilla*, 560 F.2d 1229, 1232 (5th Cir. 1977)).

In consideration of this factor, we find it important that appellant was stopped *north* of Presidio and Shafter. As previously recognized in discussing the first factor, *supra*, the Fifth Circuit has held that "[i]f a vehicle is already past towns in this country, the mere fact that it is proceeding on a public highway leading from the border is not sufficient cause to believe the vehicle came from the border." *Melendez–Gonzalez*, 727 F.2d at 411. Furthermore, as discussed *infra*, at the fifth factor, there was no showing that appellant's vehicle triggered the sensor.

Accordingly, we find that the vehicle's location, more than 50 miles north of the border, and north of two Texas towns, Shafter and Presidio, militates against a finding of reasonable suspicion.

### 3. The usual patterns of traffic on the particular road:

Mendoza stated that normally only cattle trucks travel at 4:00 a.m. While the time of appellant's stop may have been significant to Mendoza, we pause to note the stop in *Melendez–Gonzalez* occurred at 4:57

a.m. Additionally, we recognize that the remoteness of the area might also require residents and tourists to begin their travels early. "A decision to travel such roads [as Highway 67] at less busy hours should not be the difference—constitutionally speaking—determinative of the right of officers to stop vehicles." *George*, 567 F.2d at 645, quoting *Frisbie*, 550 F.2d at 338. Moreover, the sensor detected two or three other northbound vehicles in a time span of less than ten minutes. This indicates the presence of other vehicles at the time of appellant's detention. Indeed, Mendoza testified that he stopped another vehicle five minutes after stopping appellant.[4] Therefore, appellant's travel at 4:00 a.m. cannot, by itself, be deemed suspicious. We find this factor militates against a finding of reasonable suspicion.

4. *The officer's previous experience in detecting illegal entry and smuggling:*

Before stopping appellant's vehicle, Mendoza considered his experience in "alien-narcotics trafficking," and, in light of that experience "believed that there was reasonable suspicion" to make the stop. Specifically, Mendoza considered the prior sensor alert that vehicles were approaching from the border area, and, in nine years patrolling Highway 67, he had observed, "on numerous occasions," "cars of this type, with New Mexico plates, traveling north on Highway 67, that were smuggling aliens." Mendoza also noted that "we normally catch smuggling cases in the early, wee hours of the morning." Mendoza had significant experience patrolling Highway 67 and apprehending illegal aliens and smugglers. Mendoza had personal experience with smugglers and knew their habits and vehicles. He also knew many of the local residents and their usual travel habits. This factor militates in favor of finding reasonable suspicion.

5. *Information on recent illegal border crossings in the area:*

Mendoza, many miles north of the border, knew only that a sensor had indicated that several vehicles were northbound on Highway 67. The sensor, which was located at least thirty miles north of the Texas–Mexico border, detected all vehicles traveling on Highway 67 but provided no information as to a vehicle's origin or if the vehicle had actually crossed the border. Also, we find it significant that there was no showing that appellant's vehicle was one of the three or four northbound vehicles to which Mendoza was alerted. As mentioned in the discussion of the first factor, *supra*, "We discern nothing to indicate that the sensor signals being received established a reasonable suspicion that the vehicles in question were transporting illegal aliens." *Frisbie,* 550 F.2d at 338.

As Mendoza had no information on the origins of the vehicles, their contents or itinerary, or whether appellant's vehicle was even one of the vehicles detected by the sensor, this factor militates against a finding of reasonable suspicion.

6. *The driver's behavior, such as erratic driving or obvious attempts to evade officers:*

Appellant's driving was normal, neither speeding, erratic, nor evasive. For these reasons, this factor militates against a finding of reasonable suspicion.

7. *Physical aspects of the vehicle and the vehicle's load:*

The seven year old, 1979 model vehicle was not especially old, overloaded, or specially equipped. We do not agree that a vehicle with New Mexico license plates, in Texas, traveling toward New Mexico, constitutes reasonable suspicion. In *U.S. v. Lamas,* 608 F.2d 547, 549 (5th Cir.1979), the Court held that Colorado plates in New Mexico

> ... was not enough to arouse a reasonable suspicion that the car was carrying illegal aliens. To hold otherwise would render suspect all citizens of the State of Colorado traveling the roads of New

**4.** Mendoza stated that he did not stop cattle  trucks.

Mexico or Texas in other than late model cars.

Accordingly, this factor militates against a finding of reasonable suspicion.

8. *An extraordinary number of passengers, their behavior, or persons trying to hide:*

■ Prior to stopping the vehicle, Mendoza observed no unusual behavior from the vehicle's passenger to raise Mendoza's reasonable suspicion. After the stop, however, Mendoza noticed a five-gallon gasoline can on the rear floorboard behind the passenger. *Saenz,* slip op. pg. 3. Mendoza suspected the odor of gasoline "might be used to cover or disguise ... the odor of marijuana in the car." [5] The Court of Appeals reasoned that the strong odor of gasoline "led the agents to suspect that either the gasoline odor was being used to mask the smell of marihuana or that the trunk, a more likely storage area for the gasoline, was occupied by illegal aliens." *Id.* However, we cannot assign any weight to the gasoline can because Mendoza effected the stop of appellant prior to its discovery; Mendoza was in a position to observe the gasoline can only after the stop. Accordingly, the gasoline can cannot contribute to the legality of the stop. *Luera,* 561 S.W.2d at 498; *and, Viveros v. State,* 828 S.W.2d 2, 4 (Tex.Cr.App.1992). Therefore, we conclude the presence of the gasoline can contributes nothing to a finding of reasonable suspicion. This factor militates against a finding of reasonable suspicion.

### IV.

Of the eight factors in *Brignoni–Ponce,* only Mendoza's experience militates in favor of a finding of reasonable suspicion and we do not find that single factor sufficient. From the totality of the circumstances, we hold that Mendoza did not have reasonable suspicion to stop appellant's vehicle.[6]

■ Furthermore, appellant's consent to the search of the vehicle's trunk arose di-

rectly from the stop. As we held in *Viveros:*

... If the stop was illegal, it does not matter that the marihuana was in plain view or that appellant consented to the search, as both flow directly from the stop, and their validity is dependent on the validity of the stop. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

*Viveros,* 828 S.W.2d at 4.

The judgment of the Court of Appeals is reversed and the cause is remanded to the trial court.

BENAVIDES, J., concurs in the result.

---

5. Mendoza testified that no gas stations were open at that time of day.

6. Having determined that the Fourth Amendment to the United States Constitution was violated, we need not address the application of Article I, § 9 of the Texas Constitution.