David Wayne LOESCH, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–94–465–CR.

Court of Appeals of Texas,
Corpus Christi.

April 4, 1996.

Roger D. Bellows, Three Rivers, for appellant.

George P. Morrill, II, District Attorney, Beeville, for appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

YAÑEZ, Justice.

This is an appeal from a conviction for possession of marihuana pursuant to a plea bargain between appellant and State. Loesch entered a no contest plea after the trial court denied appellant's motion to have certain evidence suppressed. Appellant contends by three points of error that the trial court erred in refusing to suppress evidence against him. We reverse and remand the cause to the trial court.

On the night of the appellant's arrest, agents for the U.S. Border Patrol and officers of the South Central Narcotics Task Force parked in marked cars beside the intersection of U.S. Highway 59 and F.M. 624 in Live Oak County, Texas. The agents were parked within a few miles of a fixed immigration checkpoint, and were looking out for suspicious vehicles that might be transporting illegal aliens. At approximately 1:30 a.m., the agents and officers observed

two vehicles, one of which appellant was operating, driving unusually close together, each of which looked "weighed down." Drawing upon their combined experience with illegal trafficking in the area, the officers decided to pull appellant's car over for an investigatory stop.

Agent McCants testified that, upon stopping appellant, he concluded that appellant did not have any illegal aliens in his vehicle, but he did notice an "altered" bumper, and that the appellant acted extremely nervous. At this point, he brought out a dog trained to identify drugs, which alerted, indicating that it smelled contraband. Agent McCants allegedly obtained consent to open appellant's trunk and discovered a quantity of marihuana, wrapped in plastic and stuffed into the bumper. He then proceeded to arrest appellant.

Appellant filed a motion to suppress the marihuana seized from the search of the vehicle on the grounds that it was the fruit of an illegal detention because the agents did· not have reasonable suspicion to stop appellant. Secondly, appellant sought to have the evidence excluded on the grounds that it was obtained pursuant to an illegal search in that the agents did not have probable cause to open appellant's trunk when they did. Finally, appellant argued that the evidence should be suppressed because the State had not properly established the chain of custody.

The trial court denied appellant's motion to suppress on each of the grounds. Subsequently, appellant pled no contest to the charges of possessing marihuana, in violation of Texas Health & Safety Code § 481.121(B)(4), for an agreed judgment of eight years of deferred adjudication and a $2,000.00 fine. Loesch now appeals that pretrial order.

■ A trial court's decision at a suppression hearing to admit or exclude evidence is subject to an abuse of discretion standard of review. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App.1993). The trial court is the sole judge of the credibility of the witnesses and the weight of their testimony at a suppression hearing. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). An appellate court should not engage in its own factual review. *Banda v. State,* 890 S.W.2d 42, 51 (Tex.Crim.App.1994). Instead, it should only consider whether the trial court improperly applied the law to the facts. *Id.* If the record supports the trial court's findings, the appellate court should not disturb those findings. *Id.,* (citing *Johnson v. State,* 803 S.W.2d 272, 287 (Tex.Crim. App.1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991)).

■ In his first point of error, appellant contends that the marihuana seized was the fruit of an illegal detention and arrest because the patrol officers had no reasonable suspicion to stop him. From this assumption, appellant claims that the burden shifted to the State to prove the reasonableness of the detention, which appellant claims it failed to do. The State maintains that its agents did have a reasonable suspicion to stop defendant, and therefore its investigation was constitutional.

■ The stopping of a vehicle constitutes a "seizure" for Fourth Amendment purposes. *United States v. Martinez–Fuerte,* 428 U.S. 543, 556–58, 96 S.Ct. 3074, 3082–83, 49 L.Ed.2d 1116 (1976); *United States v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578–79, 45 L.Ed.2d 607 (1975); *State v. Sanchez,* 856 S.W.2d 166, 168 (Tex.Crim. App.1993). If a search or seizure is conducted without a warrant, it is presumed to be unreasonable, and the burden shifts to the State to prove its reasonableness. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986).

■ "Roving" U.S. border patrol agents may make warrantless stops of vehicles in search of undocumented aliens "only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Brignoni–Ponce,* 422 U.S. at 884, 95 S.Ct. at 2582. The U.S. Supreme Court in *Brignoni–Ponce* listed factors which may be taken into account in deciding whether there is reasonable suspicion to stop a car outside the U.S.–Mexican border area, including:

1) the characteristics of the area in which agents encounter a vehicle (proximity to border, patterns of traffic, etc.);

2) information about recent border crossings;

3) the driver's behavior (erratic driving, attempts to evade arrest, etc.);

4) aspects of the vehicle itself which may justify suspicion (e.g. certain cars with large compartments); and

5) other factors an officer might deem pertinent in light of his experience in detecting illegal entry and smuggling.

*Id.,* at 885, 95 S.Ct. at 2582.

■ While each factor may be considered by patrol agents before pulling a vehicle aside, the court must examine the totality of the circumstances to determine if reasonable suspicion exists. *Id.* at 885, n. 10, 95 S.Ct. at 2582, n. 10. Reasonable suspicion is not limited to any or all of these factors, which "must be analyzed on a case by case basis" to determine the legality of the stop. *Luera v. State,* 561 S.W.2d 497, 499 (Tex.Crim.App. 1978).

■ In order to determine if this stop was made pursuant to a reasonable suspicion, we must consider the testimony offered at the suppression hearing on each of the factors. At the hearing to suppress, the trial court is entitled to believe or disbelieve any or all of the testimony or evidence. *Walker v. State,* 588 S.W.2d 920, 924 (Tex.Crim.App. 1979). However, whether a search or seizure is reasonable under the Fourth Amendment is an issue of law that the appellate court reviews de novo. *Higbie v. State,* 780 S.W.2d 228, 230 (Tex.Crim.App.1989); *Gonzalez v. State,* 869 S.W.2d 588, 591 (Tex.App.—Corpus Christi 1993, no pet.).

*The Characteristics of the Area*—The appellant was driving along Highway 59, several miles beyond an immigration checkpoint, where he had just been inspected without warranting any apparent suspicion. Appellant was stopped many miles from the actual U.S.–Mexico border. Two agents testified that illegal aliens are often smuggled through the area, and that they frequently walk through the brush around the checkpoint, then catch rides with willing drivers on the other side. There was no evidence that the agents had been alerted to this particular vehicle, or that agents at the checkpoint had suspected any foul play with regard to appellant, or the vehicle he was driving behind.

In addressing a case similar to the present case, the Court of Criminal Appeals recently held that "although [the agent] stated [this highway] was a primary route for smuggling operations, we do not believe that appellant's mere presence on [this highway] can be deemed suspicious merely because of a high incidence of smuggling in the area." *Saenz v. State,* 842 S.W.2d 286, 289 (Tex.Crim.App. 1992); *see also Amorella v. State,* 554 S.W.2d 700, 701 (Tex.Crim.App.1977) (high crime reputation of area alone may not serve as basis for investigative stop). We agree, and, given the fact that there already is an immigration checkpoint up the road, we believe that an additional random "roving" patrol must have a more significant basis upon which to stop vehicles. The agents testified that, in their experience, smugglers often pick up aliens who walk around checkpoints such as the one in the proximity of the arrest area. This assertion, however, does not alone justify stopping the overwhelming majority of vehicles which are not smuggling crafty aliens. *See Brignoni–Ponce,* 422 U.S. at 882–83, 95 S.Ct. at 2580–81. The correlation between this possibility of catching illegal smuggling and the Fourth Amendment infringement arising from such discretionary roving stops beyond an immigration checkpoint does not justify the stop. *See Brown v. Texas,* 443 U.S. 47, 50–52, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979) (requiring that the public interest be balanced against the individual's right to personal security). Accordingly, we find this factor militates against finding reasonable suspicion.

*Information About Recent Border Crossings*—There was no testimony regarding any detection by agents of recent border crossings. Other cases have cited this as a justification for suspecting that a vehicle is possibly carrying an illegal alien. *Saenz,* 842 S.W.2d at 291; *Luera,* 561 S.W.2d at 499. In fact, the point at which appellant's vehicle was pulled over is many miles from the border. This factor does not militate in favor of

finding reasonable suspicion. *Saenz*, 842 S.W.2d at 291.

*The Driver's Behavior*—The agents testified that they had observed appellant driving "bumper to bumper" with another vehicle at a suspiciously slow rate of speed.[1] They further stated that the drivers seemed very nervous and rigid, staring straight ahead when the agents shined their headlights at the vehicles as they drove by, prompting the agents to suspect the vehicles were engaged in illegal activity. We do not find convincing the State's assertion that the rigid and fixed appearance of the appellant when the agents flashed their headlights on him reasonably aroused their suspicion.

The Court of Criminal Appeals addressed this very issue in *Luera v. State*, refusing to hold that the mere fact that a driver "looked straight ahead and did not look at the officers as he passed them" warranted reasonable suspicion. *Luera*, 561 S.W.2d at 499. Indeed, the Court in *Brignoni–Ponce*, upon which the State relies in its brief, held that reasonable suspicions would not be justified when officers "at best . . . had only a fleeting glimpse of the persons in the moving car, illuminated by headlights." *Brignoni–Ponce*, 422 U.S. at 886, 95 S.Ct. at 2582. In that case, agents stopped a vehicle because the driver looked hispanic, and therefore was inherently suspicious. The Court rejected that justification.

This case is analogous to *Brignoni–Ponce*, in that the agents had only a fleeting glimpse of the appellant as he drove by. They noted that, because he looked rigidly ahead instead of acknowledging them, he was therefore suspicious. However, the State did not produce any evidence suggesting that there is any reason to believe that drivers who look straight ahead when passing patrol cars are any more likely to be engaged in illegal activity than those drivers who look at patrol cars when they pass by. Any inferences by the agents in this respect are unsubstantiated, and as such should not justify a temporary seizure. It would be clearly erroneous for a trial court to justify a detention on this basis alone.

██ The agents also testified that the erratic driving also prompted suspicion. Agent Monterubio testified that as he pulled alongside the vehicles, the first vehicle sped up, and the second vehicle driven by appellant, slowed down, thereby making it difficult to pursue both vehicles at the same time. While the drivers' reactions to the patrol agents is relevant, there was no testimony that appellant attempted to evade arrest.[2] In fact, he slowed down when they passed, a fact equally insignificant by itself in suggesting either guilt or innocent behavior. We find that the behavior of the appellant also militates against finding reasonable suspicion.

*Aspects of the Car Itself*—The agents testified that the vehicles in question were older cars, commonly used to smuggle because of their big trunks, and that they seemed "heavily loaded." While the appearance of the car is a factor which may be considered, it alone does not warrant reasonable suspicion. To hold otherwise would subject anyone owning an older car to random investigatory stops. As such, we find that the age of the vehicle, to the extent that it aroused the suspicion of the officers, was not an acceptable factor in arousing the agents' suspicions, given the fact that owning an older car is as consistent with innocent activity as owning a newer car. *Johnson v. State*, 658 S.W.2d 623, 626 (Tex.Crim.App.1983).

1. Agent McCants testified that they passed the intersection at "a slow speed, below 50 miles per hour". This court fails to find that traveling past an intersection at this speed, at 1:30 a.m., should be considered suspiciously slow. *Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Crim.App.1992) (slowing to a speed that is within the speed limit is not grounds for an investigatory stop).

2. We note that speeding alone does not warrant a reasonable suspicion of transporting aliens illegally. *Luera*, 561 S.W.2d at 500. Here, appellee did not even allege that appellant was speeding. Therefore, its analogy to the facts of *U.S. v. Sharpe* is misplaced. In that case, a weighed-down truck with its windows covered nearly hit the patrol car when it turned on its overhead lights, then proceeded to speed down the highway. *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Appellant here actually slowed down and made no evasive movements of any sort.

We find equally unconvincing the State's position that the car looked suspicious because it looked weighed down. The car was not known to have been coming from the border, and it had already passed through a fixed immigration checkpoint. We do not find that inference drawn by the border patrol agents to have been rational under the circumstances.

*Combined Experience of Agents*—The agents testified that, in their experience, alien smugglers often picked up illegal aliens just beyond the checkpoint, and that was the primary reason they were in the area. They indicated that the behavior of the vehicles driving so close together aroused their suspicion, and that their reactions to the agents were consistent with smugglers.

While the agents' combined experience would ordinarily lend some credence to their presumptions, there is no indication that their suspicions were anything more than a "hunch" in this case, and therefore could not justify stopping appellant's car. *Saenz,* 842 S.W.2d at 288. The agents were not instructed by anyone at the checkpoint to investigate appellant's vehicle, nor did the appellant violate any traffic laws as he passed the patrol cars. Appellant's vehicle was not the type of vehicle mentioned by the Court in *Brignoni–Ponce* which might typically arouse suspicion,[3] nor did the officers observe extra passengers or anyone trying to hide.[4] Finally, the alleged nervousness of the appellant when he passed the patrol cars should not be considered a factor prompting reasonable suspicion. *See Glass v. State,* 681 S.W.2d 599, 602 (Tex.Crim.App.1984).

In determining whether the totality of the circumstances warranted reasonable suspicion, we must look to the *Brignoni–Ponce* factors, and the Texas cases interpreting those factors. The Texas Court of Criminal Appeals has not found reasonable suspicion for stopping a vehicle under circumstances similar to, and, in our opinion, even more suspicious than those in the present case. In *Luera,* the *Brignoni–Ponce* factors cited by the arresting agents considered by the court were:

—the area was known for alien smuggling,

—the appellant's vehicle had suspicious suspension, out of county license plates, and had triggered Border Patrol sensors,

—the driver refused to look at patrol officers when passing them, and

—the driver *attempted a high speed evasion* when approached by the officers.

The Court did not find these factors warranted a reasonable suspicion that the driver in question was involved in illegal activity, and therefore, the Court determined that the Border Patrol had conducted an illegal stop. *Luera,* 561 S.W.2d at 500.

Similarly, in *Saenz,* the Court considered the following factors:

—the road was known as a primary route for smuggling,

—the arrest was approximately 53 miles from the border,

—the arrest was 4:00 a.m.,[5]

—the driver had out of state license plates, and

—the officer's experience led him to suspect the vehicle of illegal activity.

The Court found the officer's experience in these matters as the only factor which might warrant suspicion, but that factor alone was not enough to create a reasonable suspicion to pull over the vehicle. *Saenz,* 842 S.W.2d at 292.

We do not find that the factors cited in this case differ enough from those in *Luera* and *Saenz* to warrant reasonable suspicion. This court cannot warrant roving searches based on the nervous appearance of drivers in older

---

**3.** Officers indicated to the Court that "station wagons with large compartments for fold down chairs" were the type frequently used to smuggle. *Brignoni–Ponce,* 422 U.S. at 885, 95 S.Ct. at 2582.

**4.** This also was a factor cited by the Court in *Brignoni–Ponce. Brignoni–Ponce,* 422 U.S. at 885, 95 S.Ct. at 2582.

**5.** We note that the Court stated that the time of the night should not be the difference, constitutionally speaking, in determining the rights of the officers to stop vehicles. *Saenz,* 842 S.W.2d at 291, (*citing United States v. George,* 567 F.2d 643, 645 (5th Circ.1978), and *United States v. Frisbie,* 550 F.2d 335, 338 (5th Cir.1977)).

cars who happen to drive down certain highways, absent other articulable facts which create reasonable suspicion. While we are of the opinion that the State did testify as to *some* of the criteria stated in *Brignoni–Ponce* which might, together with other factors, justify reasonable suspicion, the totality of the circumstances in this case could not warrant the seizure and inspection of appellant's vehicle. Therefore, we sustain appellant's first point of error and find that the patrol agents did not have reasonable suspicion to seize appellant's vehicle.

■ Appellant's second point of error alleges that the trial court erred by finding that the search of the appellant's car was based on probable cause. Agent McCants visually inspected the appellant's vehicle with the aid of a flashlight and concluded that there were not likely any illegal aliens in the vehicle. However, Agent McCants stated that he noticed a piece of the bumper missing, which looked as if it had been altered. After observing a piece of wrapped plastic in the bumper and the continuing nervousness of the appellant, he called his trained dog to sniff the vehicle. The dog indicated that there was either contraband or aliens in the trunk, at which point Agent McCants stated he had probable cause to search the trunk,[6] where he discovered the marihuana.

■ We hold that the search of the appellant's vehicle was a violation of his Constitutional rights. A warrantless search must be strictly circumscribed by the exigencies which justify its initiation. *Bass v. State*, 732 S.W.2d 632, 635 (Tex.Crim.App. 1987). If the scope of a search is contested, officers must show that they were properly in place where an item was found under one of the exceptions to the warrant requirement. *Snider v. State*, 681 S.W.2d 60 (Tex.Crim. App.1984). Because the agents did not have a reasonable suspicion of illegal activity to justify pulling appellant over, the agents were not allowed to search appellant's vehicle. Because the agents' suspicions were not

based on reasonable inferences that the appellant was transporting aliens unlawfully, the seizure was unreasonable. *Luera*, 561 S.W.2d at 500; *Almeida–Sanchez v. United States*, 413 U.S. 266, 269–75, 93 S.Ct. 2535, 2537–41, 37 L.Ed.2d 596 (1973). As such, the evidence seized as a result of an illegal stop should have been suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Daniels v. State*, 718 S.W.2d 702, 707–08 (Tex.Crim.App.) (*cert. denied*, 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 252 (1986). Accordingly, we sustain appellant's second point of error.

We need not address appellant's third point of error as the illegality of the search and seizure of the marihuana precludes its admission into evidence.

The judgment of the trial court is reversed and remanded.

S.W.2d at 498, (*citing Amorella v. State*, 554 S.W.2d 700 (Tex.Crim.App.1977)). The unlawful detention may also have tainted appellant's apparent voluntary consent to search the trunk. *Id.*, (*citing Armstrong v. State*, 550 S.W.2d 25 (Tex.Crim.App.1976)).