**David Wayne LOESCH, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–94–465–CR.**

Court of Appeals of Texas, Corpus Christi.

Oct. 8, 1998.

48

R. D. Bellows, Three Rivers, Brian W. Wice, Houston, for Appellant.

George P. Morrill, II, Dist. Atty., Beeville, Robert Huttash, State Pros. Atty., Jeffrey L.

Van Horn, Asst. State Atty., Austin, for Appellee.

Before DORSEY, YAÑEZ and RODRIGUEZ, JJ.

## OPINION

YAÑEZ, Justice.

We review this case on remand. We originally reversed the cause because we found the trial court had abused its discretion in failing to suppress the evidence seized, which abuse led to appellant's conviction. *Loesch v. State,* 921 S.W.2d 405 (Tex.App.—Corpus Christi 1996). The court of criminal appeals vacated our decision, however, because we individually analyzed the factors upon which the arresting agents relied on in deciding to stop the vehicle, rather than analyzing them under the totality of the circumstances. *Loesch v. State,* 958 S.W.2d 830, 832 (Tex. Crim.App.1997). The court also noted that we utilized an analytical construct that it has since disavowed. *Id.* (citing *Woods v. State,* 956 S.W.2d 33 (Tex.Crim.App.1997) (doing away with the construct of considering whether factors relied on by agents are "as consistent with innocent activity as with criminal activity"). With these instructions and standards in mind, we now reconsider the matter.

David Wayne Loesch appeals his conviction for possession of marihuana. Loesch entered a no contest plea, pursuant to a plea bargain, after the trial court denied appellant's motion to have certain evidence suppressed. He contends by three points of error that the trial court erred in denying his motion because the evidence was obtained through unconstitutional means. We reverse and remand the cause to the trial court.

## Background Facts

On the night of appellant's arrest, agents for the U.S. Border Patrol and officers of the South Central Narcotics Task Force parked in marked cars beside the intersection of U.S. Highway 59 and F.M. 624 in Live Oak County, Texas. The agents were parked within a few miles of a fixed immigration checkpoint, and were looking out for suspicious vehicles that might be transporting "illegal aliens." At approximately 1:30 a.m., the agents and officers observed two vehicles, one of which appellant was operating, driving unusually close together, each of which looked "weighed down." The agents decided to pull appellant's car over for an investigatory stop.

Border Patrol Agent Timothy McCants testified that, soon after stopping appellant, he concluded that appellant did not have any illegal aliens in his vehicle, but he did notice an "altered" bumper, and that the appellant acted extremely nervous. At this point, he brought out a dog trained to identify drugs, which alerted, indicating that it smelled contraband. Agent McCants allegedly obtained consent to open appellant's trunk and discovered a quantity of marihuana, wrapped in plastic and stuffed into the bumper. He then proceeded to arrest appellant.

## Procedural History

Appellant filed a motion to suppress the marihuana seized from the search of the vehicle on the ground that it was the fruit of an illegal detention because the agents did not have reasonable suspicion to stop appellant. Secondly, appellant sought to have the evidence excluded on the ground that it was obtained pursuant to an illegal search in that the agents did not have probable cause to open appellant's trunk when they did. Finally, appellant argued that the evidence should be suppressed because the State had not properly established the chain of custody.

■ The trial court denied appellant's motion to suppress on each of the grounds. Subsequently, appellant pleaded no contest to the charge of possessing marihuana for an agreed judgment of eight years deferred adjudication and a $2,000.00 fine. Loesch now appeals that pretrial order.

### STANDARD OF REVIEW

■ A trial court's decision at a suppression hearing to admit or exclude evidence is subject to an abuse of discretion standard of review. *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App.1993). The trial court is the sole judge of the credibility of

the witnesses and the weight of their testimony at a suppression hearing. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). An appellate court should not engage in its own factual review. *Banda v. State*, 890 S.W.2d 42, 51 (Tex.Crim.App.1994). Instead, it should only consider whether the trial court improperly applied the law to the facts. *Id.* Courts of appeals should afford almost total deference to a trial court's determination of the historical facts that the record supports. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The same amount of deference should be applied to a trial court's rulings on application of law to fact questions, or "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *See id.* However, de novo review of these mixed questions may be applied where the resolution thereof is not restricted to an evaluation of credibility and demeanor. *See id.; Rodriguez v. State*, 968 S.W.2d 554, 556–57 (Tex.App.—Houston [14th Dist.] 1998, no pet. h.). The court of criminal appeals has specifically indicated de novo review of the reasonable suspicion issue in this case was proper. *Loesch*, 958 S.W.2d at 832.

In his first point of error, appellant contends that the marihuana seized was the fruit of an illegal detention and arrest because the patrol agents had no reasonable suspicion to stop him. From this assumption, appellant claims the State failed to meet its burden to prove the reasonableness of the detention.

■ The stopping of a vehicle constitutes a "seizure" for Fourth Amendment purposes. *United States v. Martinez–Fuerte*, 428 U.S. 543, 556–58, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *State v. Sanchez*, 856 S.W.2d 166, 168 (Tex.Crim.App.1993). If a search or seizure is conducted without a warrant, it is presumed to be unreasonable, and the burden shifts to the State to prove its reasonableness. *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App.1986).

■ "Roving" U.S. border patrol agents may make warrantless stops of vehicles in search of undocumented aliens "only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country." *Brignoni–Ponce*, 422 U.S. at 884, 95 S.Ct. 2574. The U.S. Supreme Court in *Brignoni–Ponce* listed factors which may be taken into account in deciding whether there is reasonable suspicion to stop a car outside the U.S.-Mexican border area, including:

1) the characteristics of the area in which agents encounter a vehicle (proximity to border, patterns of traffic, etc.);

2) information about recent border crossings;

3) the driver's behavior (erratic driving, attempts to evade arrest, etc.);

4) aspects of the vehicle itself which may justify suspicion (e.g. certain cars with large compartments); and

5) other factors an agent might deem pertinent in light of his experience in detecting illegal entry and smuggling.

*Id.* at 885, 95 S.Ct. 2574.

■ While each factor may be considered by patrol agents before stopping a vehicle, the court must examine the totality of the circumstances—the whole picture—to determine if reasonable suspicion exists. *Id.* at 885 n. 10, 95 S.Ct. 2574. *See also U.S. v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), *U.S. v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), and *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997). Reasonable suspicion is not limited to any or all of these factors, which "must be analyzed on a case by case basis" to determine the legality of the stop. *Luera v. State*, 561 S.W.2d 497, 499 (Tex. Crim.App.1978). Reasonable suspicion requires "that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime." *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997)(citing *Garza v. State*, 771 S.W.2d 549, 558 (Tex.Crim.App.1989). Whether the facts recited by the officers gave rise to a reasonable suspicion is a question we review de novo. *Loserth v. State*, 963

S.W.2d 770, 774 (Tex.Crim.App.1998) (citing *Loesch*, 958 S.W.2d at 832).

We first set out the evidence adduced at the hearing on the relevant *Brignoni–Ponce* factors.

### The Characteristics of the Area

Appellant was driving along Highway 59, several miles beyond an immigration checkpoint, where he had just been inspected without arousing any apparent suspicion. He was stopped more than one hundred miles from the U.S.-Mexico border. Two agents testified that "illegal aliens" are often smuggled to the area, where they frequently walk through the brush and around the checkpoint, then catch rides with willing drivers past the checkpoint. There was no evidence that the agents had been alerted to this particular vehicle, or that agents at the checkpoint had suspected any foul play with regard to appellant's vehicle or the vehicle behind him.

### Information About Recent Border Crossings

No testimony regarding any detection by agents of recent border crossings was adduced at the hearing.

### The Driver's Behavior

The agents testified that they had observed appellant driving "bumper to bumper" with another vehicle. McCants said the cars were going abut 50 miles per hour, which he considered "suspiciously slow." No reference was made to any attempt to evade arrest or capture. The agents opined that the drivers seemed very nervous and rigid, staring straight ahead when the agents shined their headlights at the vehicles as they drove by.

### Aspects of the Car Itself

The vehicles in question were older cars. The agents testified that older cars are commonly used to smuggle because of their big trunks, and that they seemed "heavily loaded." The agents testified that, in fact, the car was not heavily loaded.

### Combined Experience of Agents

The agents testified that, in their experience, smugglers often picked up "illegal aliens" just beyond the checkpoint, and that was the primary reason they were in the area. They indicated that the behavior of the vehicles driving so close together aroused their suspicion, and that the drivers' reactions to the agents were consistent with smugglers. They did not cite any prior personal experience with such tactics, nor did they refer to any training materials from which they derived this theory.

### Analysis

Keeping in mind that these factors must be considered together, we look to three other cases which have addressed this issue in analogous circumstances: *Saenz v. State*, 842 S.W.2d 286, 289 (Tex.Crim.App.1992); *Luera*, 561 S.W.2d at 497; and *Sanchez v. State*, 931 S.W.2d 331 (Tex.App.—San Antonio 1996, pet. denied).

In *Luera*, the *Brignoni–Ponce* factors cited by the arresting agents and considered by the court were:

— the area was known for alien smuggling,

— the appellant's vehicle had suspicious suspension, out of county license plates, and had triggered Border Patrol sensors,

— the driver refused to look at patrol officers when passing them, and

— the driver attempted a high speed evasion when approached by the officers.

The court of criminal appeals held that these factors did not give rise to a reasonable suspicion that the driver in question was involved in illegal activity. *Luera*, 561 S.W.2d at 500. The Court therefore determined that the Border Patrol had conducted an illegal stop. *Id.*

Similarly, in *Saenz*, the court of criminal appeals considered the following factors:

— the road was known as a primary route for smuggling,

— the arrest was approximately 53 miles from the border,

— the arrest was at 4:00 a.m.,[1]

— the driver had out-of-state license plates, and

— the officer's experience led him to suspect the vehicle of illegal activity.

The Court found the officer's experience in these matters as the only factor which might warrant suspicion, but that factor alone was not enough to create a reasonable suspicion to pull over the vehicle. *Saenz*, 842 S.W.2d at 292.

More recently, the San Antonio Court of Appeals, in *Sanchez*, reversed a conviction where the following factors were referenced as the basis for stopping the vehicle:

— appellant's car was heading out of a Texas border town in a direction where there were ranches,

— appellant did not appear to be a rancher,

— appellant's car appeared to be riding low,

— appellant appeared nervous as he failed to look at the border patrol vehicle when it approached and passed him,

— appellant was driving his vehicle slowly in light early morning traffic, and

— appellant's vehicle was registered in Travis County.

The San Antonio court concluded that these factors did not give rise to a reasonable suspicion of criminal activity sufficient to warrant detention. Accordingly, it held the trial court erred in failing to suppress the evidence obtained as a result of the illegal detention. *Sanchez*, 931 S.W.2d at 334–35.

These cases demonstrate that, although evidence may be adduced on some of the *Brignoni–Ponce* factors, they may still not add up to a reasonable basis for suspicion, even when considered together. The instant case is another example of how *some* explanation for a stop does not equate with a *constitutionally valid* reason for a stop.[2]

The agents did not testify that appellant made any traffic violations. To the contrary, the agents testified that appellant was actually driving within the prescribed speed limits. They did not testify about any notification from the checkpoint of suspicious movements in the area, and did not testify that they were in any way alerted to suspicious activities from other agents in the area. Their suspicion of appellant derived exclusively from the facts that he happened to be in an area where alien smuggling was common, that he drove an older vehicle that looked weighed down, and that he did not look at them when he drove past them.[3] These facts alone were apparently all the agents deemed necessary to begin pursuit of the vehicles. Even under the low threshold for reasonable suspicion referenced in *U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), and *Woods v. State*, 956 S.W.2d 33 (Tex.Crim.App.1997), these facts would not add up to a reasonable suspicion to justify detention. It is hardly a "common sense conclusion," or "a rational inference," that the driver of such a vehicle is involved in criminal activity, given the inordinately large number of citizens who would be encompassed by these factors. To hold otherwise would warrant the detention of every citizen who drove down that highway in an

---

1. The Court stated that the time of the night should not be the difference, constitutionally speaking, in determining the rights of the officers to stop vehicles. *Saenz*, 842 S.W.2d at 291 (*citing United States v. George*, 567 F.2d 643, 645 (5th Cir.1978), and *United States v. Frisbie*, 550 F.2d 335, 338 (5th Cir.1977)).

2. As an incidental aspect of our analysis, we note each of the factors relied upon by the agents in the instant case has, at some point, been deemed insufficient to warrant temporary detention by itself. *See e.g. Viveros v. State*, 828 S.W.2d 2, 4 (Tex.Crim.App.1992) (slowing to a speed that is within the speed limit); *Luera*, 561 S.W.2d at 499 (driver who "looked straight ahead and did

not look at the officers as he passed them"); *Glass v. State*, 681 S.W.2d 599, 602 (Tex.Crim. App.1984) ("nervousness" of the driver passing patrol cars); *Saenz*, 842 S.W.2d at 289 (mere presence on [this highway] with a high incidence of smuggling in the area).

3. At the suppression hearing, Border Patrol Agent Thomas Monterubio was asked what probable cause he had to stop the vehicle. He responded, "We added all our articulable facts we built up." When asked what those facts were, Monterubio stated, "Which were the type of vehicles, the way they appeared to be heavily loaded. The drivers were very rigid, and they appeared extremely nervous."

older car with a full load, but did not make eye contact with agents while driving by.

The agents indicated that, when they pulled alongside the vehicles, one car continued at the same speed, while the other slowed down during the pursuit. They indicated this was a common tactic utilized by smugglers to evade pursuit. They did not indicate the basis upon which they held that belief, whether upon personal experience, or through training. Moreover, the agents did not testify that appellant attempted to escape pursuit, drove recklessly, or frustrated the attempts of the consolidated law enforcement agencies to detain him. In fact, both vehicles were detained without incident. *Contrast Luera*, 561 S.W.2d at 500 (defendant caused a high speed chase before submitting to authority).

It is apparent to this Court that the agents who decided to detain appellant were operating on no more than a mere "hunch" that he was engaged in illegal activity. All of the factors they relied upon, when considered together, do not amount to reasonable explanation for believing appellant's vehicle, as opposed to any other vehicle driving down the road that night, was involved in illegal activity. To borrow from the San Antonio court:

> The net effect of the [S]tate's position is that because the Border Patrol officer's "hunch" regarding illegal aliens happened to hit pay dirt on this occasion as to marihuana, the end justifies the means. However, overexuberant Border Patrol officers, armed with such an unconstitutional license as suggested by the [S]tate, would subject countless innocent citizens to improper violations of their constitutional rights where such "hunches" failed to pay off. As the last bastion of justice, the courts must protect the constitutional rights of our citizens.

*Sanchez*, 931 S.W.2d at 335.

Because the agents did not have some objective manifestation that appellant was or was about to be engaged in criminal activity to justify stopping appellant, the seizure was illegal. *Cortez*, 449 U.S. at 417, 101 S.Ct. 690; *Luera*, 561 S.W.2d at 500; *Almeida–Sanchez v. United States*, 413 U.S. 266, 269–

75, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). As such, the evidence seized as a result of an illegal stop should have been suppressed. TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon 1988); *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Daniels v. State*, 718 S.W.2d 702, 707–08 (Tex.Crim.App.1986).

We sustain appellant's first point of error and find that the border patrol agents did not have reasonable suspicion to seize appellant's vehicle.

We need not address appellant's second and third points of error as they are unnecessary to the disposition of this cause. TEX. R.APP. P. 47.1.

The judgment of the trial court is REVERSED and REMANDED for proceedings consistent with this opinion.