Saul LUERA, Appellant,

v.

The STATE of Texas, Appellee.

No. 57151.

Court of Criminal Appeals of Texas.
Panel No. 1.

Feb. 15, 1978.

Richard L. Moore, Houston, for appellant.

Carol S. Vance, Dist. Atty., J. Richard Trevathan and Wilbur F. Roberts, Jr., Asst. Dist. Attys., Houston, for the State.

Before TOM G. DAVIS, DALLY and W. C. DAVIS, JJ.

## OPINION

DALLY, Judge.

This is an appeal from an order revoking probation. The appellant, after pleading guilty, was convicted on October 18, 1976, of the offense of possession of marihuana. The court assessed punishment of imprisonment for 10 years, but suspended the imposition of sentence and granted probation.

On March 3, 1977, after hearing the State's motion to revoke probation, the trial court found that the appellant had violated the condition of probation that he would commit no offenses against the laws of this State in that he possessed marihuana on the 4th day of November, 1976. The appel-

lant's probation was revoked and sentence was pronounced.

The appellant was stopped by United States Border Patrolman Robert Lasoya and his partner about three miles outside of Hebbronville, in Jim Hogg County, on November 4, 1976. The officer smelled marihuana after he approached appellant's vehicle. Upon the officer's request, appellant opened the trunk of the vehicle, and therein were found bricks of marihuana weighing 209 pounds which were subsequently seized by the officers.

■ The question raised is whether the marihuana was lawfully seized. If the officer's *initial detention* was reasonably justified, the search of the automobile was proper, since probable cause existed when the odor of marihuana was discovered. See *Duff v. State*, 546 S.W.2d 283 (Tex.Cr.App. 1976); *Tardiff v. State*, 548 S.W.2d 380 (Tex.Cr.App.1977); *Drago v. State*, 553 S.W.2d 375 (Tex.Cr.App.1977). If the detention was unjustified, then the odor of marihuana would not have been detected; thus, the validity of the search would be tainted. See *Leighton v. State*, 544 S.W.2d 394 (Tex.Cr.App.1976); *Amorella v. State*, 554 S.W.2d 700 (Tex.Cr.App.1977); *Scott v. State*, 549 S.W.2d 170 (Tex.Cr.App.1976). The detention, if unlawful, may also have tainted appellant's apparent voluntary consent to search the trunk. See *Armstrong v. State*, 550 S.W.2d 25 (Tex.Cr.App.1976); *Truitt v. State*, 505 S.W.2d 594 (Tex.Cr.App. 1973); *Evans v. State*, 530 S.W.2d 932 (Tex. Cr.App.1975); *McDougald v. State*, 547 S.W.2d 40 (Tex.Cr.App.1977).

It is the State's position that the Border Patrol officer had sufficient probable cause to detain appellant because: (1) appellant appeared to be of Hispanic extraction; (2) the area in question was well-known for its concentration of alien-smuggling activities; (3) appellant attempted a high speed evasion of the officers; (4) appellant's automobile appeared to use "air shock" absorbers which were suspicious; (5) appellant's license plates were out-of-county, Starr County, plates; (6) appellant appeared to be "suspicious" when he refused to look at the

officers when he passed them, and (7) appellant apparently had triggered a sensor device on Highway 16.

In *Almeida-Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the United States Supreme Court held that the Fourth Amendment prohibits the use of roving patrols to search vehicles, with neither a warrant nor probable cause, at points removed from the border and its functional equivalents. See also *Tamez v. State*, 534 S.W.2d 686 (Tex.Cr.App.1976). In *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the court held that Border Patrol officers may stop vehicles only if they are aware of *specific articulable facts, together with rational inferences therefrom,* which would reasonably warrant suspicion that vehicles are occupied by aliens who may be in the United States unlawfully. Thereafter, the officers are entitled to briefly stop the vehicle, determine the citizenship status of the occupants and ask them to explain suspicious circumstances, but further detention or search must be based upon consent or probable cause.

The court in *Brignoni-Ponce*, supra, went on to detail some of the factors that may be used by Border Patrol officers to justify the detention of a vehicle, with some of these factors including: (1) the characteristics of the area in which the vehicle is encountered; (2) the proximity to the border; (3) the usual patterns of traffic on a particular road; (4) previous experience by the officer with alien traffic; (5) information concerning recent unlawful border crossings; (6) the driver's behavior, such as erratic driving or attempts to evade the officers; (7) the nature or type of vehicle itself; (8) the appearance of the vehicle as to whether or not it is heavily loaded, and (9) the appearance of the driver, such as whether or not he is of Mexican extraction, his mode of dress, his haircut, etc. These factors must be analyzed on a case-by-case basis to determine if probable cause for the initial deten-

tion has been shown. See *Brignoni-Ponce*, at footnote number 10.

The undisputed testimony is that Highway 16, near Hebbronville, is one of the areas in which alien-smuggling activity is concentrated. The incident in question occurred some 55 miles from the border on the highway from Zapata, Texas, to Hebbronville. There was no testimony as to where the agent's sensor was placed on the highway, nor was there any showing that appellant had been *anywhere near* the Mexican border on the date in question. See *United States v. Byrd*, 483 F.2d 1196 (Fifth Cir. 1973), aff'd on rehearing, 494 F.2d 1284 (Fifth Cir. 1974). There is no testimony concerning normal traffic patterns or any specific or recent unlawful alien-smuggling activity in the area. Even though we note that appellant's name appears to be of Hispanic origin, there was no testimony by the agent to indicate that appellant readily appears to be of Hispanic extraction, or that he considered this factor in making the stop. See *United States v. Brignoni-Ponce*, supra. It is critical to observe that the instant case arose in broad daylight at approximately 3:20 p. m., and did not occur during the late night or early morning darkness.

■ Patrolman Lasoya testified that he made his decision to stop appellant's vehicle when "we first met the car . . . we made the turn to make further search of the vehicle." The testimony reflects that this decision was made for the sole reason that appellant "looked straight ahead" and did not look at the officers when he passed them, which according to Lasoya constituted suspicious activity. Absent any showing of furtive gestures on appellant's part, we refuse to hold that an automobile driver's alert attention to the highway in front of him constitutes reasonable suspicion to believe that he is unlawfully carrying aliens, especially where the vehicle is traveling in broad daylight on a main highway near a populated area.[1]

1. We observe that one of the authorities cited by the State, *United States v. Barnard*, 553 F.2d 389 (Fifth Cir. 1977), concluded that a driver's

*repeated* and *nervous glances* at a Border Patrol officer constituted a factor which *could be* considered by the officers in making the deci-

The State also argues that the physical appearance of appellant's automobile with its "exposed air shock absorbers" could be a factor to consider, since Lasoya testified that alien smugglers often use air shocks on their automobiles. We disagree. Not only did Lasoya admit that he could not tell whether the automobile had air shocks on it without looking underneath the car, he also admitted that air shocks were used by many drivers for normal driving purposes. In view of the officer's specific testimony that the vehicle was "riding high," we can only conclude that the reasonable inference from this observation was that the trunk of the car was *not loaded down*, and therefore, reasonable suspicion to believe that the driver was transporting aliens unlawfully would seem to evaporate. There is no testimony as to whether the vehicle driven by appellant was readily capable of carrying aliens. Further, the mere fact that appellant's vehicle had Starr County license plates appears to be irrelevant since Starr and Jim Hogg Counties are immediately adjacent, with several highways leading from Starr County to intersections on Highway 16 leading to Hebbronville.

■ The last factor considered important by the State, and perhaps the most difficult to analyze, is the State's contention that the record shows that appellant attempted to evade the officers by leading them on a high speed chase. We disagree with the State's interpretation of the facts. Lasoya's testimony indicated that appellant was exceeding the speed limit going through Hebbronville, apparently near a school zone. However, there is no evidence that appellant ever attempted any evasive action to

elude the officers, as the record indicates that appellant maintained his same course and direction on Highway 16, and stopped at one stop sign on that route. While the officer testified that he had to speed *his car* up to 90 miles per hour in order to catch appellant, there was no testimony as to appellant's speed, or any evasive tactics. It must also be observed there was no showing that the officers used red lights, sirens, or any other method in which to stop appellant. The record fails to show any attempted evasion of the officers on appellant's part, and we decline to hold that the offense of speeding, without more, constitutes a reasonable suspicion to believe that appellant was transporting aliens unlawfully.[2] See *Fatemi v. State* (Tex.Cr.App.1977) 558 S.W.2d 463.

■ After considering all of the factors asserted by the State, we hold that the officer's inferences were not based upon logical or rational justification that appellant was transporting aliens unlawfully; thus, absent probable cause for appellant's detention, the search of his automobile was unreasonable. See *Almeida-Sanchez v. United States*, supra; *United States v. Brignoni-Ponce*, supra; *United States v. Ortiz*, 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975); *United States v. Martinez-Fuerte*, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *Tamez v. State*, supra.[3]

For the reasons stated, the order revoking probation is reversed and remanded.

sion to stop the vehicle. To accept Lasoya's concept of "suspicious looking," every driver, whether he looks or not, would apparently be considered "suspicious."

2. The State does not show us any authority for the proposition that an Immigration Service (Border Patrol) agent has jurisdiction to stop traffic offenders on highways in the state. Texas law does not include Border Patrol agents within its definition of a "peace officer." See Art. 2.12, V.A.C.C.P.

Furthermore, it does not appear that federal law gives Immigration Service officers jurisdic-

tion to make traffic offense stops. See the United States and Nationality Act, 8 U.S.C.A., Sec. 1101(a)(18); 8 U.S.C.A., Sec. 1225(a), and 8 U.S.C.A., Sec. 1357(a)(4) and (c).

3. We have examined all the State's authorities, and they can be differentiated on the facts, involving situations where heavily loaded vehicles were noticed, during the early morning hours, near checkpoint areas, or where the drivers' obviously evasive or erratic conduct clearly constituted reasonable suspicion.