UNITED STATES of America,
Plaintiff–Appellee,

v.

Edilberto GONZALEZ–BASULTO,
Defendant–Appellant.

No. 89–1450.

United States Court of Appeals,
Fifth Circuit.

April 9, 1990.

Paul D. Lazarus, Entin, Schwartz, Margules & Lazarus, Miami, Fla., for defendant-appellant.

Philip Police, Asst. U.S. Atty., Ronald F. Ederer, and LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge and WISDOM and SMITH, Circuit Judges.

PER CURIAM:

### I.

Edilberto Gonzalez–Basulto (Gonzalez) was convicted of conspiracy to possess and possession of more than five kilograms of cocaine with intent to distribute it. 21 U.S.C. §§ 841(a)(1), 846. He challenges his conviction and his sentence. We affirm.

### II.

On December 18, 1988, border patrol agents stopped Gonzalez at the Sierra Blanca, Texas permanent immigration checkpoint. Gonzalez was driving a refrigerated tractor-trailer rig. An agent asked Gonzalez if he was an American citizen. Gonzalez nervously responded in broken English that he was an American citizen. The agent detected what he believed to be a Cuban accent and asked Gonzalez what he was hauling. Gonzalez replied with the Cuban word for oranges, "naranjas," rather than with the Puerto Rican word, "chinas." The agent referred Gonzalez to the secondary inspection area to verify his claim of United States citizenship.

Gonzalez and Jose Rodriguez–Minozo (Rodriguez) exited the truck. An agent asked Rodriguez and Gonzalez in English to produce immigration documentation. Rodriguez did not answer. The agent asked again in Spanish. Rodriguez still did not answer and looked nervously about at the agents and the drug-sniffing dogs present at the checkpoint. Rodriguez was referred to other agents for additional questioning. Gonzalez produced immigration documentation.

The agent asked Gonzalez in Spanish whether he would mind opening the trailer for an inspection. Gonzalez replied, "No problem." Gonzalez unlocked and opened the trailer, which contained white boxes of oranges and lemons. A drug-sniffing dog and his handler were hoisted into the trailer. The dog soon detected an odor. However, the truck's refrigeration unit startled the dog. The agents brought in another dog, which alerted on a row of brown boxes. The agents opened the boxes and discovered cocaine. Gonzalez was arrested and charged.

Gonzalez moved to suppress the cocaine on the grounds that his consent to the search was involuntary or alternatively that the search exceeded the scope of his consent. The district court denied the motion. Gonzales was convicted by a jury and sentenced to 235 months imprisonment, five years of supervised release, and $100 in special assessments. Gonzalez now appeals his conviction and sentence. We affirm.

### III.

Gonzalez argues that the stop and the search violated his rights under the fourth amendment. He claims he did not freely and voluntarily consent to the search but merely acquiesced in the agents' authority. He argues alternatively that the search exceeded the scope of his consent because he only expected the agents to take a brief look in his trailer. We reject these contentions.

Border patrol agents may briefly detain motorists at permanent immigration checkpoints to question them about their citizenship. *United States v. Martinez–Fuerte,* 428 U.S. 543, 556–62, 96 S.Ct. 3074, 3082–85, 49 L.Ed.2d 1116 (1976). The agents may refer motorists to the secondary inspection area without any "particularized reason." *Id.* at 563, 96 S.Ct. at 3085. Stopping Gonzalez and referring him to the secondary inspection area therefore did not violate his constitutional rights.

The voluntariness of Gonzalez' consent to the search is a question of fact determined by examining the totality of the

circumstances. *United States v. Gonzales*, 842 F.2d 748, 754 (5th Cir.1988). Six primary factors guide the district court in making this determination:

(1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*United States v. Galberth*, 846 F.2d 983, 987 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 167, 102 L.Ed.2d 137 (1988). The district court's finding that consent was voluntarily obtained cannot be overturned on appeal unless it is clearly erroneous. *Gonzales*, 842 F.2d at 754.

The agents did not brandish any weapons or threaten Gonzalez in any way. Gonzalez was not placed under arrest until after the search uncovered the cocaine. Gonzalez cooperated with the agent who requested permission to search by responding "no problem" to the request and by unlocking and opening the trailer doors. While the agent admitted that he did not inform Gonzalez of his right to refuse to consent, the agent emphasized that he did not put any kind of pressure on Gonzalez to get his consent. He merely asked for permission. Gonzalez was not well-educated but he exhibited a sufficient degree of understanding to indicate his "no problem" response was intelligent. Gonzalez may well have believed that no drugs would be found because the cocaine was hidden in boxes toward the front of the trailer and there was little crawl space in the trailer. The district court was not clearly erroneous in concluding that Gonzalez voluntarily consented to the search. *See United States v. Sutton,* 850 F.2d 1083, 1085 (5th Cir.1988).

■ Nor did the search exceed the scope of Gonzalez' consent. Gonzalez knew before arriving at the checkpoint that agents were using drug-sniffing dogs to examine vehicles. Dogs were also present on the scene before Gonzalez gave his consent.

Gonzalez stood silent as one then another drug-sniffing dog and his handler were hoisted up into the trailer. In fact, Gonzalez made no protest at any point during the entire search procedures.

■ The district court also correctly concluded that using the drug-sniffing dog to examine the closed boxes containing the cocaine was not a "search" within the meaning of the fourth amendment. *United States v. Dovali–Avila,* 895 F.2d 206, 207 (5th Cir.1990). Once the dog alerted on the boxes, the agents had probable cause to search the boxes and seize the cocaine. *Id.* We conclude that the district court properly denied Gonzalez' motion to suppress the cocaine.

■ Gonzalez also argues that the district court should have given him a two-point reduction in his base-offense level under the Guidelines for acceptance of responsibility. His claim is based on his cooperation with the border patrol agents and his contrition at the sentencing hearing. We reject this contention.

The Sentencing Guidelines require a two-level reduction in the defendant's base-offense level if "the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Sentencing Guidelines, 3E1.1(a). The district court's finding on this question "is entitled to great deference, greater than that accorded under the clearly erroneous standard...." *United States v. Tellez,* 882 F.2d 141, 143 (5th Cir.1989).

In this case, Gonzalez did not disclose any significant information about his role in the offense or the source of the cocaine. Instead, Gonzalez claimed after his arrest and at trial that he had stolen the boxes of cocaine, marked "bearings," from an unattended pick-up truck. Gonzalez insisted at the suppression hearing that he did not voluntarily consent to the search. It was only after this contention was rejected that he claimed at sentencing to have "cooperated" with the border patrol agents. Under these circumstances, the district court was

entitled to discredit Gonzalez' belated expressions of contrition.

## IV.

The judgment is AFFIRMED.