NUMBER 13-97-774-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


JAIME JAVIER GUTIERREZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

___________________________________________________________________


On appeal from the 156th District Court


of Live Oak County, Texas.


___________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Hinojosa
and

Yañez

Opinion by Justice Yañez




 Appellant, Jaime Javier Gutierrez, appeals from the trial court's
denial of his motion to suppress evidence he contends the State
obtained through unconstitutional means. Appellant was convicted for
possession of approximately fifty-two pounds of marihuana. Tex.
Health & Safety Code Ann. § 481.121(b)(5) (Vernon Supp. 2000). He
entered a plea of no contest, pursuant to a plea agreement, after the
trial court's denial of his motion to suppress. He was sentenced to five
years confinement and fined five thousand dollars. In four points of
error, appellant contends the trial court erred in denying his motion
because: (1) the initial stop of his vehicle at a border patrol checkpoint
was invalid; (2) the arresting border patrol agent lacked authority to
make a warrantless arrest or conduct a search and seizure under state
law; (3) there was no probable cause to search his vehicle; and (4) any
consent to the search by appellant was involuntary. We affirm. 

 Background Facts


 On February 14, 1997, appellant and a passenger(1) were traveling
north on U.S. Highway 59 in Live Oak County when they were stopped
at a border patrol checkpoint about twenty miles north of Freer. The
checkpoint consisted of traffic cones and signs identifying the location. 
The signs said, "slow," and "stop ahead." There was no permanent
structure at the location, which is approximately eighty-four miles from
the border. The location is one of several designated for use in the area
by the Chief Patrol Agent. The "Freer Checkpoint," a permanent border
patrol facility, is located on U.S. Highway 59 west of Freer about thirty-one miles away. On duty that day were four border patrol agents,
including Agent Lauro Vidal, who was questioning drivers at the
primary inspection point, and Elias Alvarez, an agent with the Central
South Texas Narcotics Task Force, who was assisting Vidal. All
northbound vehicles on Highway 59 were stopped. The purpose of the
checkpoint was primarily, to check for deportable immigrants, and
secondarily, to check for narcotics and other contraband. 

 Vidal testified appellant's pickup, which was loaded with furniture, 
approached the checkpoint at a high rate of speed. Vidal questioned
appellant about his citizenship status and appellant stated he was a
U.S. citizen.(2) During the questioning, Vidal noticed appellant was
visibly nervous; his voice was shaking, his throat was throbbing, and
his hands and legs were shaking. Vidal testified that based on his
eighteen years of experience, he considered appellant's reaction
suspicious, and referred the vehicle to secondary inspection.(3) As
requested, appellant stepped out of the vehicle and consented to a
search of the truck. A border patrol canine trained to detect narcotics
was walked around the truck and "alerted" on a spare tire in open view
on the back of the truck. An agent boarded the truck and attempted to
lift the tire, which was unusually heavy. Appellant admitted the tire
contained approximately forty-four pounds of marihuana. The dog also
alerted on a small bag in the back of the truck, which was opened and
found to contain several bundles of marihuana. Appellant was formally
arrested by the border patrol agents. The agents then telephoned
federal DEA authorities, who advised that the case should be turned
over to local authorities for prosecution. Appellant was taken into
custody by agent Alvarez and was later transported to the county jail.

Procedural History


 Appellant filed a motion to suppress the evidence seized from the
search of the vehicle on the ground that it was the fruit of an illegal
arrest and search because border patrol agents are not peace officers
and have no authority under state law to arrest, conduct searches and
seizures, or establish temporary checkpoints. Second, appellant
sought to have the evidence suppressed on the ground that his arrest
and detention were without probable cause. Third, he argued the
evidence should be suppressed because any consent given by appellant
was involuntary. Finally, appellant argued the evidence should be
suppressed because it was obtained pursuant to an illegal search in
that the search was conducted without a warrant or probable cause in
violation of the U. S. Constitution, Article 1, Section 9 of the Texas
Constitution, and the code of criminal procedure. 

 Following a hearing, the trial court denied appellant's motion and
issued findings of fact and conclusions of law. The court found: 

I.


 After hearing evidence and the argument of counsel the
Court makes the following findings of fact:


 That the United States Immigration Service can, under
the laws of the United States, set up permanent border
patrol check stops within 80 aeronautical miles of the United
States border with any foreign country.


 That the United States Immigration Service set up a
permanent border patrol check stop at the intersection of US
Hwy 59 and Texas State Hwy. 624, which check stop was
manned on a regular basis although not on a daily basis;


 That the permanent check stop designated at US Hwy
59 and Texas State Hwy. 624 was within 80 aeronautical
miles of the United States border and Mexico and positioned
on a main corridor from Mexico into the United States;


 That on the 14th day of February, 1997, United States
border patrol agents were manning the check stop at US
Hwy 59 and Texas State Hwy. 624 stopping all traffic to
check for illegal aliens and other illegal contraband
transported in violation of the laws of the United States;


 That defendant's car was stopped as a matter of
course and in the normal routine of exercising the duties of
checking for illegal aliens and other illegal contraband being
transported in violation of the United States laws;


 That based upon defendant's reaction to being
stopped, and to the request of officers to see his drivers [sic]
license, the United States border patrol agents had
reasonable suspicion to ask the defendant to pull into a
secondary area for further search for illegal aliens or illegal
contraband under United States laws;


 That United States border patrol agents had reasonable
suspicion based on the reactions of the defendant to have
their K-9 dog examine the vehicle for illegal aliens or illegal
contraband;


 That upon indication from the dog that illegal
contraband was in the vehicle, the United States border
patrol agents had probable cause to search the vehicle and
found two packages of marihuana in a plastic sack;


 That based upon their discovery of illegal contraband,
United States border patrol agents had probable cause to
arrest the defendant under the laws of the United States;


 That upon contact with the United States Drug
Enforcement Agency, that Agency declined to accept the
case for prosecution under the laws of the United States and
the US border patrol agents turned over the defendant, the
contraband, and the defendant's vehicle to Elias Alvarez, a
Central South Texas Task Force agent, who was present at
the check stop at the time defendant's car was stopped,
searched, and defendant arrested under the laws of the
United States;


 That the check point at US Hwy 59 and Texas State
Hwy 624 was not a State of Texas checkpoint but a US
Immigration Service Border Patrol checkpoint.

II.


 After hearing evidence and the argument of counsel the
court made the following conclusions of law:


 1. That Defendant was stopped at a permanent United
States border control check point in the normal course of
checking for illegal aliens and other contraband;


 2. That there was reasonable suspension [sic] to
search the vehicle under laws of the United States;


 3. That there was probably [sic] cause to arrest the
Defendant under the laws of the United States;


 4. That border patrol agents are authorized to release
and did release the Defendant and the contraband to Central
South Texas Task Force agent Elias Alvarez for arrest and
prosecution under the laws of the State of Texas.


 THEREFORE, Defendant's Motion to Suppress is Denied.






Standard of Review

 The standard for courts of appeals' review of trial courts' rulings
on motions to suppress evidence based on Fourth Amendment claims
depends upon the type of question presented to the reviewing court. 
Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); Loesch v. State,
979 S.W.2d 47, 50 (Tex. App.--Corpus Christi 1998, no pet.). As the
court of criminal appeals explained in Guzman:

[A]s a general rule, the appellate courts, including this Court,
should afford almost total deference to a trial court's
determination of the historical facts that the record supports
especially when the trial court's fact findings are based on an
evaluation of credibility and demeanor. The appellate courts,
including this Court, should afford the same amount of
deference to trial courts' rulings on 'application of law to fact
questions,' also known as 'mixed questions of law and fact,'
if the ultimate resolution of those questions turns on an
evaluation of credibility and demeanor. The appellate courts
may review de novo 'mixed questions of law and fact' not
falling within this category. This Court may exercise its
discretion to review de novo these decisions by the
intermediate appellate courts. 


Guzman, 955 S.W.2d at 89 (citations omitted).


 The amount of deference a reviewing court affords to a trial court's
ruling on a mixed question of law and fact often is determined by which
judicial actor is in a better position to decide the issue. See id. at 87
(citations omitted). If the issue involves the credibility of a witness,
thereby making the evaluation of that witness's demeanor important,
compelling reasons exist for allowing the trial court to apply the law to
the facts. See id. On the other hand, if the issue is whether an officer
had probable cause to seize a suspect under the totality of the
circumstances, the trial judge is not in an appreciably better position
than the reviewing court to make that determination. See id. Therefore,
although due weight should be given to the inferences drawn by trial
judges and law enforcement officers, determinations of reasonable
suspicion and probable cause should be reviewed de novo on appeal. 
See id. (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)); see
also United States v. Hernandez, 976 F.2d 929, 930 (5th Cir. 1992)
(determination that a search or seizure did not violate the Fourth
Amendment is a question of law reviewed de novo). "[T]he legal rules
for probable cause and reasonable suspicion acquire content only
through application. Independent review is therefore necessary if
appellate courts are to maintain control of, and to clarify the legal
principles." Guzman, 955 S.W.2d at 87 (quoting Ornelas, 517 U.S. at
697).(4)

 We review all facts under the totality of the circumstances,
working together and not in isolation of each other. Loesch v. State,
958 S.W.2d 830, 832 (Tex. Crim. App.1997) (citing Guzman, 955
S.W.2d at 89). Although we conduct a deferential review of historical
facts, we need not assign the same weight or significance to such facts
as the trial court in deciding the ultimate issues before us. Loserth, 963
S.W.2d at 774. 

Legality of the Stop


 In his first point of error, appellant argues the trial court erred in
overruling his motion to suppress evidence because the initial stop of
his vehicle violated the Fourth Amendment of the United States
Constitution, Article 1, Section 9 of the Texas Constitution, and chapter
14 of the Texas Code of Criminal Procedure. Appellant challenges the
validity of the stop on the grounds that (1) the checkpoint was a
"temporary" (rather than "permanent") checkpoint, at which the border
patrol lacked authority to conduct a "border search," and (2) the
checkpoint constituted an "unconstitutional roadblock" unauthorized by
state law.

 When analyzing and interpreting Article 1, Section 9 of the Texas
Constitution, we are not bound by United States Supreme Court
decisions that address the Fourth Amendment. Hulit v. State, 982
S.W.2d 431, 436 (Tex. Crim. App. 1998); Heitman v. State, 815 S.W.2d
681, 690 (Tex. Crim. App. 1991); Treviño v. State, 875 S.W.2d 373, 375
(Tex. App.--Corpus Christi 1994, no pet.). The decisions of the United
States Supreme Court represent the minimum protection that Texas
must afford its citizens. Heitman, 815 S.W.2d at 690. The federal
constitution sets the floor for individual rights; state constitutions
establish the ceiling. Id. 

 Article 1, Section 9 of the Texas Constitution does not offer greater
protection to the individual than the Fourth Amendment to the United
States Constitution, and it may offer less protection. Hulit, 982 S.W.2d
at 436. 

 In this appeal, we may deem the federal and state constitutional
protections identical, because appellant's brief does not separately argue
whether there are any differences in his protections against
unreasonable search and seizure under the federal and state
constitutions. See Narvaiz v. State, 840 S.W.2d 415, 432 (Tex. Crim.
App. 1992); Hypolite v. State, 985 S.W.2d 181, 185 (Tex. App.--San
Antonio 1998, no pet.).

 Border patrol agents may briefly detain motorists at permanent
immigration checkpoints to question them about their citizenship. 
United States v. Martinez-Fuerte, 428 U.S. 543, 556-62 (1976); United
States v. Gonzalez-Basulto, 898 F.2d 1011, 1012 (5th Cir. 1990). As
the Supreme Court explained in Martinez-Fuerte,

 The Border Patrol conducts three kinds of inland traffic-checking operations in an effort to minimize illegal
immigration. Permanent checkpoints, such as those at San
Clemente and Sarita, are maintained at or near intersections
of important roads leading away from the border. They
operate on a coordinated basis designed to avoid
circumvention by smugglers and others who transport the
illegal aliens. Temporary checkpoints, which operate like
permanent ones, occasionally are established in other
strategic locations. 


Martinez-Fuerte, 428 U.S. at 552 (emphasis added). 

 Appellant challenges the trial court's finding that the checkpoint
was a "permanent border patrol check stop . . . which check stop was
manned on a regular basis although not on a daily basis." The State
contends the checkpoint was "a temporary checkpoint, operated like a
permanent one, that is occasionally established at strategic locations." 
Appellant contends there is no evidence to support the conclusion that
the checkpoint was permanent and further contends the holding in
Martinez-Fuerte is expressly limited to permanent checkpoints.(5) 

 The evidence shows the checkpoint consisted of traffic cones and
several warning signs. There was no permanent structure at the
location. Agent Vidal denied the checkpoint was temporary:

Well, I don't --- wouldn't call it temporary because all our
checkpoints are just checkpoints. There are no temporary
checkpoints anymore. They're all considered as checkpoints. 



Vidal testified the checkpoint was set up by the border patrol and that
the location was a "routine inspection spot," one of several checkpoint
locations designated by the Chief Patrol Agent for use in the area. All
northbound vehicles were stopped for questioning, a procedure
"follow[ed] on every checkpoint." There was no evidence indicating the
agents in the field participated in choosing the location of the
checkpoint or the procedures to be followed. After reviewing the
record, we cannot say the trial court abused its discretion in finding the
checkpoint was "permanent . . . manned on a regular basis. "

 In Martinez-Fuerte, the Supreme Court upheld the use of fixed
checkpoints to stop vehicles and question the occupants about their
citizenship, even absent any individualized suspicion that the vehicles
contain illegal aliens. Martinez-Fuerte, 428 U.S. at 562. In support of
his argument that Martinez-Fuerte is inapplicable to the present case,
appellant points to a footnote in the opinion, in which the court limited
its holding to "permanent checkpoints." Id. at 566 n.19. At the outset
of the opinion in Martinez-Fuerte, however, the court characterized the
issue before it as "whether a vehicle may be stopped at a fixed
checkpoint for brief questioning of its occupants even though there is
no reason to believe the particular vehicle contains illegal aliens." Id. at
545 (emphasis added). Similarly, the court held that such stops and
questioning "may be made in the absence of any individualized
suspicion "at reasonably located checkpoints." Id. at 562 (emphasis
added). The limitation in footnote 19, moreover, appears in the context
of distinguishing the holding in Martinez-Fuerte from previous cases
"requiring probable cause for any vehicle search in the interior and
reasonable suspicion for inquiry stops by roving patrols." Id. at 566
n.19 (referencing, e.g., United States v. Ortiz, 422 U.S. 891 (1975)
(holding that officers may not search private vehicles without consent
or probable cause at traffic checkpoints which are removed from the
border and its functional equivalents); United States v. Brignoni-Ponce,
422 U.S. 873 (1975)(holding a roving border patrol stop permissible
only if officer aware of specific articulable facts, together with rational
inferences from those facts, that reasonably warrant suspicion that a
vehicle contains illegal aliens)).(6)

 We hold the checkpoint in the present case is a fixed checkpoint
governed by the holding in Martinez-Fuerte. Accordingly, we hold that
the initial stop of appellant's vehicle did not violate his constitutional
rights.

 We next address appellant's argument that the stop was unlawful
because it constituted an "unconstitutional roadblock" unauthorized
under state law. Appellant points to Agent Vidal's testimony that he
did not know if the border patrol had authority from the State of Texas
to set up the checkpoint. Appellant also contends the checkpoint fails
to meet the balancing tests to determine the constitutionality of
roadblock checkpoints applicable in Texas under Michigan Dept. of
State Police v. Sitz, 496 U.S 444 (1990),(7) and Webb v. State, 739
S.W.2d 802 (Tex. Crim. App. 1987).(8) The State responds that the trial
court found the checkpoint "was not a State of Texas checkpoint but a
U.S. Immigration Service Border Patrol checkpoint." The evidence
shows uncontroverted testimony by agents Vidal and Alvarez that the
checkpoint was established by the United States Border Patrol. 

 Border patrol checkpoint operations are conducted pursuant to
statutory authorizations empowering border patrol agents to interrogate
those believed to be aliens as to their right to be in the United States. 
8 U.S.C. § 1357(a)(1) (2000). 

 We hold the trial court did not abuse its discretion in finding the
checkpoint was a border patrol checkpoint. We overrule appellant's first
point.

Authority of Agent


 In his second point of error, appellant contends that under article
2.122(3) of the Texas Code of Criminal Procedure, as it existed at the
time of appellant's arrest, border patrol agents were specifically
excluded from a list of federal agents who were given "powers of arrest,
search and seizure as to felony offenses only under the laws of the
State of Texas." The applicable version of article 2.122(a) provided, in
pertinent part:

(a) The following named criminal investigators of the United
States shall not be deemed peace officers, but shall have the
powers of arrest, search and seizure as to felony offenses
only under the laws of the State of Texas:

. . . .


(3) Special Agents of United States Customs, excluding
border patrolmen and custom inspectors;

. . . .


Tex. Code Crim. Proc. Ann. art. 2.122(a)(3) (Vernon Supp. 1996)
(amended 1997, 1999) (current version at Tex. Code Crim. Proc. Ann.
art. 2.122(a)(3) (Vernon Supp. 2000).(9) 

 We interpret appellant's argument to be that the language in
article 2.122(a)(3), prior to its amendment in 1997, indicates that Agent
Vidal acted outside the bounds of his authority in arresting appellant. 
We disagree. 

 Appellant's reliance on article 2.122(a) is misplaced. The statute
cited by appellant addresses the authority granted to federal actors to
make arrests under state laws. Appellant was arrested pursuant to
authority granted to border patrol agents under federal statutes. In
support of his argument, appellant cites two cases, Luera v. State, 561
S.W.2d 497, 500 n.2 (Tex. Crim. App. 1978), and Sanchez v. State, 582
S.W.2d 813 (Tex. Crim. App. 1979). Both cases are inapplicable to the
present circumstances. In Sanchez, the court found no constitutional
violation where two border patrol agents detained a driver they believed
to be intoxicated when they encountered him stopped on the highway. 
Sanchez, 582 S.W.2d at 814. The footnote cited by appellant in Luera
merely notes that border patrol agents have no jurisdiction to stop
traffic offenders (for violations of state law) on state highways. Luera,
561 S.W.2d at 500 n.2. We reject appellant's argument and hold his
arrest by Agent Vidal was not barred by article 2.122(a). 

 Appellant also argues that although article 2.122(a) authorized
"Special Agents of United States Customs" to make arrests under state
laws, "customs inspectors" have no such authority, and the record is
inadequate to establish Vidal is a customs agent. We have already held 
appellant's argument regarding the applicability of article 2.122(a) to be
without merit.

 Moreover, border patrol agents have been designated by the
Bureau of Customs as customs agents. See United States v.
Thompson, 475 F.2d 1359, 1362-63 (5th Cir. 1973) (citing Customs
Delegation Order No. 42, 36 Fed. Reg. 13410 (T.D. 71-181, 1971).(10) "'It
appears that Border Patrol agents wear two hats, one as an
immigration officer and the other as a customs officer.'" Id. at 1363
(quoting United States v. McDaniel, 463 F.2d 129, 134 (5th Cir. 1972));
see also United States v. Muniz-Melchor, 894 F.2d 1430, 1437 (5th Cir.
1990) (border patrol agents at temporary checkpoint authorized to
enforce laws regarding controlled substances in Title 21 of U.S. Code). 
 

 Evidence obtained by federal officers acting lawfully and in
conformity to federal authority is admissible in state criminal
proceedings. State v. Toone, 823 S.W.2d 744, 748 (Tex. App.--Dallas,
1992), aff'd on other grounds, 872 S.W.2d 750 (Tex. Crim. App. 1994)
(discussing "reverse silver-platter doctrine"). We hold the trial court did
not err in concluding that border patrol agents are authorized to release
appellant and the evidence seized to state authorities for prosecution. 
We overrule appellant's second point of error. 

Probable Cause to Search


 In his third point of error, appellant contends the trial court erred
in denying his motion to suppress because there was no probable
cause to search his vehicle. Appellant focuses on Agent Vidal's
testimony that he referred appellant to secondary inspection because of
appellant's "visible nervousness" and argues that nervousness is
insufficient to constitute probable cause to search appellant's vehicle.

 Border patrol agents may stop motorists, question them about
their citizenship, and selectively refer them to a secondary inspection
area without any individualized suspicion. Martinez-Fuerte, 428 U.S.
at 566; Hernandez, 976 F.2d at 930; United States v. Gonzalez-Basulto,
898 F.2d 1011, 1012 (5th Cir. 1990); United States v. Dovali-Avila, 895
F.2d 206, 207 (5th Cir. 1990). 

 Border patrol agents may not, however, conduct a warrantless
search of the referred vehicle without consent or probable cause. 
Hernandez, 976 F.2d at 930 (citing Dovali-Avila, 895 F.2d at 207). "A
canine 'sniff' of the exterior of a car does not constitute a search within
the fourth amendment." Id.; Gonzalez-Basulto, 898 F.2d at 1013. 
When a dog, which has been trained to detect concealed contraband or
hidden people, alerts in the near presence of a particular vehicle, that
action is sufficient to give rise to probable cause to search that vehicle. 
Hernandez, 976 F.2d at 930; Dovali-Avila, 895 F.2d at 207; Gonzalez-Basulto, 898 F.2d at 1013.

 In the present case, Agent Vidal properly referred appellant's
vehicle to secondary inspection and conducted a canine "sniff." No
particularized suspicion was needed for such action. Once the dog
alerted on the back of the truck, Agent Vidal had probable cause to
search the truck and legally discovered the marihuana. We overrule
appellant's third point of error. 

Consent


 In his fourth point of error, appellant contends that any consent
granted by him to search the vehicle was involuntary. "Consent and
probable cause are alternative grounds justifying warrantless vehicle
searches. If either ground existed prior to the search, the search was
valid and proof of the other ground is not required." Muniz-Melchor,
894 F.2d at 1437 (quoting United States v. Sutton, 850 F.2d 1083,
1085 (5th Cir. 1988)). Based on our determination that there was
probable cause to search appellant's vehicle, we need not address
appellant's fourth point. Tex. R. App. P. 47.1.

 The judgment of the trial court is AFFIRMED. 


 ____________________________________

 LINDA REYNA YAÑEZ

 Justice


Publish.

Tex. R. App. P. 47.3


Opinion delivered and filed 

this 1st day of June, 2000. 

 


1. The passenger denied knowledge of the drugs found in appellant's vehicle
and is not involved in this appeal. 
2. No testimony was presented at the suppression hearing regarding whether
appellant was requested to produce, or did produce, documentation of citizenship.
Agent Alvarez's written investigation report reflects, however, that "as [appellant]
handed his identification to Vidal, [appellant's] hand was shaking as well." 
3. Vidal testified he referred appellant to secondary inspection for further
questioning because of appellant's nervousness and because of safety considerations:


When I noticed that he was extremely nervous, I asked him to park at
the secondary inspection and allow us to proceed a further inspection
of the vehicle, based on his actions and also for our safety, because
Highway 59 is a two-lane highway. The vehicles come by, and we're
searching the vehicle. Somebody might either run over us or run over
him.
4. The majority in Ornelas said de novo review is appropriate for
federal constitutional claims under the Fourth Amendment for three
reasons: (1) sweeping deference would allow varied results under
similar facts, inconsistent with a unitary system of law; (2) where legal
concepts such as probable cause and reasonable suspicion acquire
content only through application, independent review is necessary to
maintain control of and clarify legal principles; and (3) de novo review
unifies precedent so as to provide defined set of rules to law
enforcement.


Loserth v. State, 963 S.W.2d 770, 774 n.2 (Tex. Crim. App. 1998) (discussing
Ornelas v. United States, 517 U.S. 690 (1996)). 
5. Appellant also contends there is no evidence to support a conclusion that the
checkpoint qualifies as the functional equivalent of the border. The State does not
contend, and the trial court did not find, that the search was justified as a "border
search" or as a search at a site which qualifies as the functional equivalent of the
border. Accordingly, we will not address this aspect of appellant's argument. 
6. See also United States v. Payan, 905 F.2d 1376 (10th Cir. 1990) (a
"temporary checkpoint," operated only "whenever manpower resources and weather
conditions permitted," permissible under Martinez-Fuerte; because of "the
presumption of regularity that attaches to discretionary agency decisionmaking,"
defendant has burden of showing checkpoint location unreasonable); United States
v. Hernandez, 739 F.2d 484 (9th Cir. 1984) (for Martinez-Fuerte to apply, checkpoint
need not operate all the time or be at a permanent structure; important factor is lack
of discretion when operated); United States v. Vasquez-Guerrero, 554 F.2d 917 (9th
Cir. 1977) (checkpoint was reasonably located, as it was at a place which prevents
easy circumvention of other checkpoints); State v. Guerrero, 119 Ariz. 273, 580 P.2d
734 (1978) (permanent checkpoint does not require permanent structure or round-the-clock operation; was sufficient that location used for several years, approaching
motorists were aware of its presence, checkpoint was operated by standardized
procedures, and was visibly manned by law enforcement officers). But see United
States v. Maxwell, 565 F.2d 596, 597 (9th Cir. 1977) (long-continued intermittent use
of temporary checkpoint does not render it a permanent checkpoint for purpose of
treating stop as one justified by Martinez-Fuerte). 
7. In Sitz, the United States Supreme Court applied the balancing test set forth
in Brown v. Texas, 443 U.S. 47 (1979), to determine the constitutionality of a sobriety
checkpoint program established by a state police department. Brown held a
"suspicionless search," (i.e., a search, like a roadblock search, conducted in the
absence of a warrant and without probable cause or reasonable suspicion) is
reasonable under the Fourth Amendment when it has met the following balancing
test: the public interest must be balanced against the individual's right to personal
security in light of three factors: (1) the state interest involved, (2) the level of intrusion
on the individual's privacy, and (3) effectiveness of the procedure used in achieving
its stated goal. See id. at 50-51; see also State v. Sanchez, 856 S.W.2d 166, 168
(Tex. Crim. App. 1993) (explaining and applying Sitz in holding roadblock for
questioning driver's licenses and insurance unreasonable search and seizure where
it was established by four individual Department of Public Safety officers, officers did
not follow standardized guidelines in operating roadblock, officers acted without
authorization or guidance of superior officer and without established procedure
regarding location of roadblock or its operation, and state offered no evidence
demonstrating effectiveness of roadblock in identifying violators). 
8. In Webb, the Texas Court of Criminal Appeals utilized the Brown v. Texas
balancing test for suspicionless seizures, weighing the public interest against the
intrusion imposed on the individual in light of: (1) the need or interest of the state, (2)
the discretion given to the officers, and (3) the intrusion, subjective and objective,
upon the individual. The court held a "combination" driver's license check and
sobriety roadblock operation was an unreasonable seizure where the operation lacked
proper constitutional safeguards and operational guidelines. Webb v. State, 739
S.W.2d 802, 812 (Tex. Criim. App. 1987). 
9. The current version of Article 2.122(a) provides, in pertinent part:

. . . .

(3) Special Agents of the United States Customs Service;

. . . .

(10) Special Agents of the United States Immigration and Naturalization
Service;. . . 


 Thus, border patrolmen are now expressly included in the list of federal
investigators authorized to conduct arrests, searches and seizures as to felony
offenses only under state law. Tex. Code Crim. Proc. art. 2.122(a)(3),(10) (Vernon
Supp. 2000). 
10. Agent Vidal testified he was "cross-designated with U.S. Customs and with
DEA" and was "allowed to enforce Federal laws that pertain to Title 21, interdiction
of narcotics."