OPINION
MILLER, Judge:
¶ 1 Rosa Becerra was convicted after a jury trial of possession of drug paraphernalia and methamphetamine for sale and sentenced to a combined prison term of five years. On appeal, she contends the trial court erred in denying her motion to suppress the methamphetamine when it concluded that her written and oral consent to search her car included inspection by a drug-detection dog (K-9). For the reasons that follow, we affirm.
Factual and Procedural Background
¶ 2 In reviewing a trial court’s ruling on a motion to suppress, the appellate court considers only the evidence presented at the suppression hearing. State v. Spears, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996). In addition, we “view the facts in the light most favorable to sustaining the trial court’s ruling.” State v. Gonzalez, 235 Ariz. 212, ¶ 2, 330 P.3d 969, 970 (App.2014). Only the officer who conducted the search testified at the suppression hearing.
¶ 3 In 2011, a Department of Public Safety officer stopped Becerra’s car for speeding and a cracked windshield. After issuing a written warning for the traffic violation and a repair warning for the windshield, the officer asked Becerra if he could search the vehicle, to which she said yes. The officer then gave her a consent-to-seareh form, which stated in both English and Spanish:
I, [name], give consent to search my vehicle and any of its contents under my control. I understand that:
(1) I can refuse to allow my vehicle to be searched.
(2) I can withdraw my consent to search at any time.
(3) Any evidence found during this search can be used against me in court.
(4) This consent does not include property of any individual adult passengers. Separate consent must be obtained from those individuals.
After confirming that Becerra could read Spanish, the officer asked her to read through the form and sign it if she agreed, and added that if she had any questions she could ask him. She signed the Spanish portion of the form. He asked her if she understood the form, and she said yes.[1] Their conversation was in English.
*92 ¶4 The officer directed Becerra and her passengers to exit the car and stand on a sidewalk about twenty feet from the ear. He went to his patrol car, which was parked behind Becerra’s car, and retrieved his K-9. The officer testified that his patrol car was visible from the sidewalk and Becerra was able to see him take the K-9 out of the patrol car. Becerra was standing close enough that the officer “[m]ost definitely” could have heard her if she had said something to him, but she did not. He testified that throughout the investigation, he never saw or heard her do or say anything to indicate that she withdrew her consent to search the ear.
¶ 5 The officer had the K-9 conduct an exterior sniff of Becerra’s car by walking all the way around it. The K-9 did not alert to the exterior of the car. The officer next directed the K-9 to sniff the interior of the ear. The K-9 alerted to a purse placed on the driver’s seat.[2] The officer returned the K-9 to his vehicle and then searched the purse, finding the methamphetamine inside.
¶ 6 In her motion to suppress Becerra argued the seizure of the methamphetamine violated the Fourth Amendment because the use of a K-9 to sniff the interior of the car exceeded the scope of her consent. The trial court denied the motion, finding Becerra freely and intelligently consented to a search and the actual search remained within the bounds of her consent. A jury found her guilty of the charge and after she was convicted and sentenced as described above, she appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).
Consent to Search Vehicle With K-9
¶ 7 A warrantless search of a ear without the driver’s consent or probable cause to believe it contains contraband or other evidence of a crime violates the Fourth Amendment. See U.S. Const. amend. IV; California v. Carney, 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985) (automobile exception to warrant requirement justified by lessened expectation of privacy in vehicle); see also Ariz. Const. art. II, § 8; State v. Reyna, 205 Ariz. 374, 375, ¶ 5, 71 P.3d 366, 367 (App.2003). Because the state did not assert the officer had probable cause to search her car, Becerra’s consent was the only issue addressed at the suppression hearing. We review the trial court’s ruling on a motion to suppress for an abuse of discretion. State v. Butler, 232 Ariz. 84, ¶ 8, 302 P.3d 609, 612 (2013).
¶ 8 Determining the validity of a law enforcement officer’s search based on consent generally involves two factors: (1) whether the consent was voluntarily given and (2) whether the search was within the scope of the consent. See State v. Paredes, 167 Ariz. 609, 612-13, 810 P.2d 607, 610-11 (App.1991). Becerra acknowledges that her oral and written consent was voluntary. Her single contention on appeal, as she argued below, was that the scope of her consent did not reasonably extend to a search of the inside of her ear by the officer’s K-9.
¶ 9 A general consent to search is unqualified, absent any announcement of the object of the search or other express limitation, subject only to the bounds of reasonableness. See United States v. McWeeney, 454 F.3d 1030, 1034-35 (9th Cir.2006). Even after a person initially consents to a search, she nevertheless remains free to withdraw or narrow the scope of her consent at any time. Id. at 1034. “The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of ‘objective’ reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?” Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991).[3]
*93 ¶ 10 Becerra argues “no reasonable person would believe that a dog was going to be placed into the interior of their vehicle” when consenting to a search. She reasons that absent an explicit question by the officer, such as “whether he and his dog could search,” the officer should assume consent does not include the assistance of a K-9. She supports her reasonable person argument with examples of why some people do not want dogs around them or their property: the presence of hair, claws, saliva, and indiscriminately wagging tails. Although it is undoubtedly true that some people prefer to avoid dogs for those reasons, the issue of objective reasonableness to determine the scope of a consent to search does not turn on the personal likes or dislikes of the defendant, or even the preferences of a group of people. See, e.g., United States v. Marshall, 348 F.3d 281, 287 (1st Cir.2003) (consenting party’s subjective belief irrelevant). Instead, it depends on the rational beliefs and knowledge of a reasonable person. For instance, in Jimeno, the defendant argued and the Florida appellate court agreed that consent to search a vehicle would not reasonably include the closed containers within it. 500 U.S. at 250, 111 S.Ct. 1801. The Supreme Court rejected this per se rule, however, because a “reasonable person may be expected to know that narcotics are generally carried in some sort of container.” Id. at 251, 111 S.Ct. 1801 (emphasis added). Here, the issue is whether a person who has generally consented to a search of her vehicle may expect that a law enforcement officer could use a K-9 to assist in the search.
¶ 11 K-9s have assisted law enforcement officers conducting searches for more than a century because of their superior olfactory abilities. See, e.g., Hodge v. State, 98 Ala. 10, 13 So. 385, 385 (1893) (search capabilities of K-9s “common knowledge” by 1893); see also Charles F. Sloane, Dogs in War, Police Work and on Patrol, 46 J. Crim. L. & Criminology 385, 388 (1955) (noting dogs have been used to track criminals since at least fifteenth-century England). They have been used to detect drug contraband for more than forty years. See, e.g., United States v. Fulero, 498 F.2d 748, 749 (D.C.Cir.1974) (per curiam) (marijuana-sniffing K-9 “had been working at the port of entry at San Luis, Arizona regularly for at least two years” by time of trial). In fact, K-9s are a ubiquitous part of modern law enforcement. See, e.g., United States v. Howard, 448 F.Supp.2d 889, 891 (E.D.Tenn.2006) (noting the “great number of criminal eases” involving drug detection K-9s); see also Charles L.W. Helm, Note, A Huff and a Puff Is No Longer Enough: How the Supreme Court Built a House of Bricks With Its Decision In Florida v. Jardines, 9 Liberty U.L. Rev. 1, 12 (2014) (noting that in addition to drug investigations, K-9s are used “to find missing persons, sweep for explosives, find remains of murder victims, locate discarded pieces of evidence, or even assist fire investigators in determining if an accelerant might have been used”).
¶ 12 Knowledge about the role of K-9s in law enforcement is not limited to criminal justice circles. Many patrol vehicles display prominent signs that the officer is accompanied by a K-9. See, e.g., People v. Bell, 43 Cal.App.4th 754, 51 Cal.Rptr.2d 115, 117 (1996) (noting “patrol car was marked ‘K-9’ ”), abrogated on other grounds by People v. Brendlin, 38 Cal.4th 1107, 45 Cal.Rptr.3d 50, 136 P.3d 845 (2006), vacated, Brendlin v. California, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). In fact, placing K-9 markings on a private car may be particularly important in determining whether a person is attempting to impersonate a police officer. See State v. Beaubrun, 36 So.3d 897, 900 (Fla.Dist.Ct.App.2010).
¶ 13 The training and work of K-9s is recognized in widely viewed documentaries, such as ones produced by National Geographic and Animal Planet. See Alpha Dogs, National Geographic, http://channel.national geographic.com/wild/alpha-dogs/ (last visited Jan. 8, 2016); K-9 Cops Videos, Animal Planet, http://www.animalplanet.com/tv-shows/ other/videos/k9-eops/ (last visited Jan. 8, 2016). K-9s even have a place in popular culture as demonstrated by their leading *94 roles in movies and television. See, e.g., K-9 (Universal Pictures 1989); Rin Tin Tin: K-9 Cop (The Family Channel 1988-93). The reasonable person in the United States would not be surprised or find any novelty in a law enforcement officer’s use of a K-9, just as he or she might use a flashlight, to search a vehicle for di’ug contraband. Therefore, we cannot accept Becerra’s contention that the constitution mandates a per se rule excluding K-9s from the scope of a general consent and requiring officers to explicitly ask for permission to search with a K-9.
¶ 14 Rejection of Becerra’s proposed bright-line rule does not mean adoption of the opposite rule—i. e., everyone must assume a K-9 will be used in all searches. Instead, trial courts must look to the totality of the circumstances in the exchange between the officer and person to determine whether a consensual search remained within the bounds of the consent actually given, and appellate courts will affirm the trial court’s judgment absent clear error. State v. Swanson, 172 Ariz. 579, 583, 838 P.2d 1340, 1344 (App.1992). Arizona precedent and persuasive federal ease law guide our consideration of the suppression ruling.
¶ 15 In State v. Paredes, this court held the trial court erred in concluding that the use of a K-9 in a vehicle search exceeded the scope of a general consent. 167 Ariz. at 613, 810 P.2d at 611. In that ease the officer had asked if he “could look through the vehicle,” Paredes consented, and then the officer retrieved his K-9 from the patrol vehicle. Id. at 610, 810 P.2d at 608. In rejecting Paredes’s argument, we observed that when he consented, the K-9 was on the scene and “the defendant did not revoke his consent when the dog was brought to the vehicle.”[4] Id. at 613, 810 P.2d at 611. Finding instructive the Fifth Circuit’s reasoning in United States v. Gonzalez-Basulto, 898 F.2d 1011 (5th Cir.1990) (per curiam), we found the presence of the K-9 and the absence of an objection by the defendant or revocation of his consent crucial to our determination that the trial court had erred by granting the motion to suppress. 167 Ariz. at 613, 810 P.2d at 611.
¶ 16 In Gonzalez-Basulto, border patrol agents at an immigration checkpoint asked the defendant if he would “mind opening the trailer for an inspection,” to which he replied, “ ‘No problem.’ ” 898 F.2d at 1012. Unlike the officer here, the border patrol agents did not inform Gonzalez-Basulto of his right to refuse or to withdraw consent to search. Id. at 1013. Nonetheless, the court held that because the defendant could observe K-9s at the checkpoint before he gave his consent and he stood by silently as the K-9 entered the trailer, the district court properly concluded search with a K-9 did not exceed the scope of consent. Id. Becerra provides no authority rejecting the reasoning in Gonzalez-Basulto, and our own research discloses general acceptance of it. See, e.g., Bell, 51 Cal.Rptr.2d at 126 (defendant who knew officer was accompanied by K-9 should expect it would assist search); Castro v. State, 755 So.2d 657, 659 (Fla.Dist.Ct.App.1999) (no objection when K-9 began search).
¶ 17 Both parties cite United States v. Woods, 445 F.Supp.2d 1328 (M.D.Ala.2006), as additional persuasive authority. In that case a police officer stopped the defendant’s car based on reasonable suspicion that the defendant was involved in drug activity. Id. at 1330. The defendant denied having contraband in the car. Id. “ ‘So, you don’t mind if I search it?’” the officer asked, and the defendant replied, ‘“[N]o.’” Id. The officer began to search inside the vehicle. Id. About ten minutes into the stop, a K-9 team arrived. Id. The handler spoke to the defendant for a few minutes. Id. The K-9 subsequently alerted to drugs hidden in the center console. Id. at 1330-31. In denying the defendant’s motion to suppress the drugs, the court reasoned that “before the canine search began, [the defendant] had been fully aware for some time of the dog’s presence and its purpose; that a canine search ensued as part of [his] consent came as no surprise *95 to anyone present.” Id. at 1332. The defendant “‘had ample opportunity to limit the scope of the search, or request that it be discontinued’ ” after realizing a K-9 would be used, but he did not do so. Id., quoting United States v. Harris, 928 F.2d 1113, 1117-18 (11th Cir.1991). On these facts, the court concluded that the defendant’s general consent to a search of the ear reasonably included the use of a drug-sniffing K-9 in the interior of the car where narcotics might reasonably be hidden. Id. at 1332-33.
¶ 18 Becerra attempts to distinguish Paredes, Gonzalez-Basulto, and Woods on the basis that in each case “it was abundantly clear to the defendant that dogs were being utilized for the vehicle searches prior to obtaining the consent or conducting the search.” She essentially argues the facts in those cases are more compelling, but by this argument also implicitly contends the trial court committed clear error in finding that the search with the K-9 “was within the bounds of consent.” We disagree. There was sufficient evidence that Becerra, like the defendant in Woods, was “fully aware ... of the dog’s presence and its purpose” before the K-9 entered the vehicle. 445 F.Supp.2d at 1332. Moreover, as in Paredes, GonzalezBasulto, and Woods, the trial court had before it uncontested evidence that Becerra did not object when presented with unambiguous indications that the officer would use a K-9 to assist in the search. On this record, we cannot conclude the trial court committed clear error in its factual finding regarding the scope of consent.
¶ 19 Becerra also relies on Dominguez v. State, 616 So.2d 506 (Fla.Dist.Ct.App.1993), to distinguish Woods. There, the defendant consented to a warrantless search of his apartment for narcotics. Id. at 506. Fifteen minutes later, a K-9 was brought to the scene. Id. at 506-07. After the K-9 alerted to a sink in the apartment, the officers opened the wall behind the sink to find narcotics hidden there. Id. at 507 & n. 1. The court found the use of the K-9 exceeded the reasonable scope of the defendant’s consent. Id. at 507. But Dominguez is distinguishable for two reasons. First, the court was careful to note that its holding rested on the absence of any “circumstances from which consent to the use of the drug detection dog could be reasonably implied.” Id. For instance, it distinguished Gonzalez-Basulto because the K-9s were “openly used and were visible to [the] defendant.” Id. (emphasis added). Likewise, the K-9 was visible to Becerra. Second, the court emphasized that the search in question was an invasive search of a private home, where one’s reasonable expectation of privacy under the Fourth Amendment is at its apex. Id. The court thus scrutinized defendant’s consent “‘with special care.’ ” Id., quoting Gonzalez v. State, 578 So.2d 729, 734 (Fla.Dist.Ct.App.1991). Courts have long recognized that one has a lesser expectation of privacy in a vehicle than in a private home. See, e.g., Carney, 471 U.S. at 390-91, 105 S.Ct. 2066; Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Similarly, cases involving a K-9 brought onto the curtilage of a home are inapposite. See Florida v. Jardines, — U.S. -, -, 133 S.Ct. 1409, 1415-16, 185 L.Ed.2d 495 (2013); State v. Foncette, 238 Ariz. 42, ¶¶ 15-16, 356 P.3d 328, 331-32 (App.2015) (K-9 sniff of hotel hallway did not invade constitutionally protected area even though in close proximity to one).
K-9 Exterior Vehicle Search Affecting Consent to Interior Search
¶ 20 The dissent seemingly would adopt Becerra’s proposed per se rule, or at least concludes the Fourth Amendment requires the state to show something more than the fact that the defendant had given a general consent to search and had been able to see the K-9 with the officer as the officer approached the vehicle to conduct the search. We will not repeat the discussion of Becerra’s arguments our colleague finds persuasive, but separately consider his additional reasoning that a K-9 exterior sniff eliminates a person’s ability to withdraw her consent.
¶ 21 The dissent reasons that because law enforcement officers are not required to obtain consent for a K-9 sniff of the exterior of a car under Illinois v. Caballes, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), a person would never know the officer’s inten *96 tions until the moment the K-9 was in the car. This rationale places too much weight on Caballes. First, even assuming a person knows she has no basis for objecting to an exterior sniff, it does not inhibit a reasonable person from asking whether the officer will direct the K-9 to enter the vehicle. For instance, Becerra was close by and easily could have made that inquiry but did not do so. Second, there was no evidence before the trial court establishing or even suggesting Becerra was surprised or concerned when the K-9 was directed to the driver’s seat.[5] Had Becerra indicated that she only expected the K-9 to conduct an exterior sniff, the trial court could have considered that fact as part of the totality of the circumstances. See, e.g., State v. Ontiveros-Loya, 237 Ariz. 472, ¶ 24, 352 P.3d 941, 948 (App.2015) (scope of consent is question of fact to be determined from totality of circumstances). Finally, the argument contradicts the reasoning in Paredes, Gonzalez-Basulto, and Woods. The presence of the K-9 is the impetus for the person to make additional inquiries or to withdraw consent. In this respect, Paredes is directly on point because consent to search was given before the K-9 left the officer’s patrol car. 167 Ariz. at 610, 613, 810 P.2d at 608, 611. Additionally, Caballes does not negate the reasoning in those cases because the defendant declined to give consent; therefore, the holding and the Court’s reasoning does not apply here. 543 U.S. at 410, 125 S.Ct. 834 (K-9 exterior sniff during lawful traffic stop does not violate Fourth Amendment because it only reveals location of contraband person has no right to possess).
¶ 22 In sum, contrary to our dissenting colleague’s characterization, we do not “contend that only an unreasonable person would be uncomfortable with a strange animal entering her private space.” Rather, we conclude that when a person has consented to a search of her vehicle after having been unequivocally informed the consent could be withdrawn at any time, a reasonable person would do so if she felt the use of a K-9 in conducting the search was objectionable or unacceptable for any reason. This conclusion is consistent with our jurisprudence and the protections of the Fourth Amendment.
Disposition
¶ 23 For the reasons stated, the trial court did not abuse its discretion in denying Becerra’s motion to suppress. We therefore affirm the convictions and the sentences imposed.

. After the opening brief was filed in this appeal, the United States Supreme Court issued its opinion in Rodriguez v. United States, -U.S.-, -, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015), holding that police may not prolong an otherwise-completed traffic stop to conduct a dog sniff absent reasonable suspicion of criminal activity. Because the parties disagreed as to what effect Rodriguez might have on the present case, we solicited supplemental briefing. We conclude the record does not permit us to address the *92 issue and express no opinion about its application here.

. Becerra conceded in her motion that the purse belonged to her.

. In its expanded statement of the issue, the Court actually asks whether the officer's beliefs about the consent exchange were "objectively reasonable.” Jimeno, 500 U.S. at 249, 251, 111 S.Ct. 1801. An officer's beliefs, to be objectively reasonable, must be based on what a reasonable lay person in those circumstances would have believed. For instance, in State v. Ahumada, which relied on Jimeno, the court discussed circumstances from which the officer might have concluded the scope of consent included a search *93 of the pockets, but based its holding on what "reasonable persons” would have understood. 225 Ariz. 544, 546, ¶¶7, 14, 241 P.3d 908, 910, 912 (App.2010).

. Becerra contends this language is dicta because the K-9 in Paredes also alerted to the trunk, but we conclude the holding cannot be limited to an exterior search, especially in light of the court's reliance on United States v. Gonzalez-Basulto, 898 F.2d 1011 (5th Cir.1990) (per curiam).

. It is not clear from the record that the K-9 actually entered the car; instead, it could have alerted to the purse as soon as the car door was opened. Nonetheless, we assume the K-9 entered the vehicle.